In re Anna M. BUTLER, Debtor.

Anna M. BUTLER, Plaintiff,

v.

William LEJCAR, Defendant.

Bankruptcy No. 94 B 09039.
Adv. No. 94 A 00880.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Aug. 16, 1994.

Marshall A. Levin, Chicago, IL, for debtor/plaintiff.

Jonathan L. Smith, Balin Smith and Associates, Chicago, IL, for defendant.

## MEMORANDUM OPINION

JACK B. SCHMETTERER, Bankruptcy Judge.

This Adversary proceeding relates to plaintiff's pending Chapter 13 petition under Title 11, U.S.C. Plaintiff seeks under Count I to avoid entirely a pre-petition transfer of interests in her residence under 11 U.S.C. § 548(a). Alternatively, she seeks in Count II to avoid such transfer under § 522(h) to the extent of the state homestead rights of herself and her husband. That alleged transfer consisted of issuance of a tax deed, following expiration of the redemption period under Illinois law following a real estate tax sale as to her home. Defendant William Lejcar ("Lejcar") was the tax purchaser.

Lejcar moved for summary judgment on both counts. For reasons discussed below, that motion is denied. Plaintiff also requested summary judgment, but, for reasons earlier stated from the bench, that motion was denied on July 19, 1994.

## SUMMARY OF UNDISPUTED FACTS

The relevant facts are not disputed. On January 1, 1989, a statutory lien under Illinois law attached to the Illinois home of Debtor/Plaintiff, Anna M. Butler ("Butler"). This lien was created on account of Butler's failure to pay her 1989 General Real Estate Taxes. On January 4, 1991, the Circuit Court of Cook County entered a Judgment and Order for Sale of Butler's home. Three days later, the Cook County Collector, on behalf of the State of Illinois, (the "State") conducted the annual tax sale and "sold" Butler's property to Lejcar. Lejcar received a certificate of purchase from the Cook County Collector. However, under state law, Lejcar could not obtain the deed to the property until Butler's statutory right of redemption expired.

On September 29, 1993, Butler's redemption period expired under Illinois law. On November 23, 1993, Anna's husband, Dennis Butler, filed his petition for relief under Chapter 13 of the Bankruptcy Code, Title 11 U.S.C. §§ 101 *et seq.*[1] Mr. Butler was co-owner of the subject home. This Court entered an Order modifying the automatic stay in Mr. Butler's bankruptcy proceeding. This allowed Lejcar to go forward with his tax deed proceeding in the Circuit Court of Cook County. Subsequently, the Circuit Court of Cook County entered an Order directing issuance of a tax deed as to the Butlers' property to Lejcar. On April 5, 1994, the Circuit Court of Cook County entered an Order for Possession as to that property in favor of Lejcar. However, execution of that order was stayed until May 5, 1994.

On May 5, 1994, Butler filed her Chapter 13 bankruptcy petition. Eight days later, she filed this Adversary Complaint, seeking to recover title to her home. In her complaint, Butler alleges that issuance of the tax deed transferred ownership of her home to Lejcar. Since that transfer took place within the year prior to the filing of her petition, Butler requests that this Court avoid the transfer pursuant to 11 U.S.C. § 548(a). Lejcar argues that no transfer within § 548(c) occurred between himself and debtor. Assuming *arguendo* that a transfer did occur, he contends that it took place at the annual tax sale. This sale took place at least three years prior to the filing of Butler's petition. Consequently, he says that the transfer was too early to be within the realm of § 548(a). Also, Lejcar contends that, if a transfer occurred at the annual tax sale, it was between himself and the State. Since the State must have received Butler's property prior to selling it, Lejcar maintains that Butler should be proceeding against the State, as the initial transferee of Butler's property. Lejcar argues that Butler cannot recover her property from him without first avoiding the transfer between herself and the State. Finally, if the transfer is measured from a date subsequent to the tax deed sale, Butler is said not to be entitled to the property since her right of redemption under state law had expired. Therefore, it is contended that Butler is not able to "cure" any default under 11 U.S.C. § 1322(b).

The basic issues presented here are: First, for purposes of § 548, when in the Illinois real estate tax sale process is there a "transfer" of debtor's property? Second, if the transfer takes place upon expiration of the redemption period, what are the rights of the parties if such a transfer is avoidable under § 548.[2]

## STANDARDS FOR SUMMARY JUDGMENT

Under Fed.R.Bankr.P. 7056 (Fed.R.Civ.P. 56(c)), summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine

---

1. *See In re Dennis Butler,* 93 B 24624 (Bankr. N.D.Ill.1993).

2. Lejcar contends that the filing of Anna Butler's Chapter 13 was a collateral attack on this Court's order in Dennis Butler's bankruptcy granting him relief from the automatic stay. However, Lejcar did not explain the legal basis for this conclusion. He neither mentions nor discusses the doctrines of collateral estoppel or *res judicata.* Regardless, neither doctrine appears to apply. By admission of both parties, the avoidance issue was not before this Court in Dennis Butler's bankruptcy. Therefore, this proceeding is not an attack on this Court's order granting Lejcar relief from stay in Dennis Butler's bankruptcy.

issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); and *Trautvetter v. Quick,* 916 F.2d 1140, 1147 (7th Cir.1990). The primary purpose for granting a summary judgment motion is to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Farries v. Stanadyne/Chicago Div.,* 832 F.2d 374, 378 (7th Cir.1987). The burden is on the moving party to show that no genuine issue of material fact is in dispute. *Anderson,* 477 U.S. at 322, 106 S.Ct. at 2552; *Matsushita,* 475 U.S. at 585–86, 106 S.Ct. at 1355.

On a summary judgment motion, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2514; *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355; *Billups v. Methodist Hosp. of Chicago,* 922 F.2d 1300, 1302 (7th Cir.1991); *Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 335 (7th Cir.1991).

Rule 12(M) of the Local Rules of the United States District Court for the Northern District of Illinois, adopted by the District Court as a rule of the Bankruptcy Court on May 6, 1986, requires that a party moving for summary judgment file a detailed statement of material facts as to which it contends there is no genuine issue.[3] Rule 12(N) requires that the party opposing the motion file a response and statement of material facts as to which there is no genuine issue. In her response to the defendant's motion for summary judgment, Butler admitted the plaintiff's recapitulation of the facts. Therefore, the facts alleged by Lejcar are deemed to be true.

*DISCUSSION*

## I. *Timing of the Transfer*

█ In recent years, a number of bankruptcy proceedings have been filed in this district by debtors seeking to avoid the consequences of an Illinois annual tax sale. This is the latest effort of that sort.

An annual tax sale is the process in which the State of Illinois sells properties in which it has a tax lien. 35 ILCS 200/21–205 (1994). In *In re McKeever,* 132 B.R. 996, 1005–8 (Bankr.N.D.Ill.1991), my colleague, Judge Katz, thoroughly explained the procedural workings of the annual tax sale under Illinois law. That excellent discussion is followed here.

As pointed out in *McKeever,* an annual tax sale terminates the State's tax lien. In its place, the tax sale purchaser receives a certificate of purchase. 35 ILCS 200/21–250 (1994). This certificate is a new lien, independent from the prior tax lien, that grants the tax purchaser certain powers. The most significant of these powers is the right to assume ownership of the property, if the property owner fails to satisfy this new lien within the period for redemption provided by the statute. 35 ILCS 20/22–40 (1994). Under state law, the owner is precluded from redeeming the property after the redemption period has expired.

From the perspective of a property owner, the tax sale is similar to a substitution of creditors. Instead of owing taxes to the State, the owner is liable to the tax purchaser for the amount bid at the tax sale, plus interest. If the owner does not redeem from the tax sale, the State may not foreclose on the debtor's property, but the tax purchaser may do so.

In *McKeever,* the debtors failed to exercise their right of redemption. The tax purchaser then obtained the deed to the McKeever's property. Subsequently, the McKeevers sought in bankruptcy to avoid the transfer of

**3.** The new Local Bankruptcy Rules went into effect on July 11, 1994, and apply to all pending cases. Former Local Bankruptcy Rules 12(M) and 12(N) have been replaced by new Local Bankruptcy Rules 402.M and 402.N, respectively.

This motion was filed, a briefing schedule set, and the matter fully briefed prior to the effective date of the new Local Bankruptcy Rules. Therefore, the Court will apply the old Local Bankruptcy Rules to the disposition of this motion.

their property to the tax purchaser through the use of 11 U.S.C. § 548(a)(2). For that provision to apply, the alleged transfer must have occurred within one year prior to filing of the bankruptcy petition. 11 U.S.C. § 548(a)(2).[4] The tax sale purchaser argued that, if a transfer took place at all, it took place at the time of the tax sale itself. That sale took place over a year before the filing of the McKeever's bankruptcy petition. Thus, the purchaser argued that § 548(a)(2) was not applicable.

*McKeever* agreed with the tax purchaser that a "transfer" of the debtor's interest in property, as defined by 11 U.S.C. § 101(58)[54],[5] took place at the tax sale. *McKeever* at 132 B.R. 1008–09. But, for purposes of § 548, this was not the relevant transfer. *Id.* The court then discussed four possible events that may be considered the "transfer" of a debtor's property under § 548:

1) *Attachment to the tax lien*—A lien attaches at the time which taxes are levied until the taxes are paid or until the property is sold under this Code. 35 ILCS 200/21–75 (1994).

2) *Tax Sale*—If the taxes are not paid, a tax sale is conducted in which the bidder receives a certificate of purchase upon payment of the delinquent taxes. 35 ILCS 200/21–205, 240, and 250 (1994).

3) *Expiration of Right of Redemption*—After completing the state law procedural and substantive requirements, the certificate holder may obtain the tax deed. 35 ILCS 220/21–350 (1994).

4) *Issuance of the Tax Deed*—The tax purchaser obtains merchantable title. 35 ILCS 200/22–20, 55 (1994).

*McKeever,* 132 B.R. at 1008–9. *See also In re Moureau,* 147 B.R. 441, 442 (Bankr. N.D.Ill.1992).

*McKeever* decided that, for purposes of § 548(a), the third "transfer" described above, that is the expiration of redemption right, completed the transfer of the debtor's property under the Illinois tax sale process. *McKeever,* 132 B.R. at 1009. This conclusion and the reasoning supporting it has been uniformly accepted by bankruptcy judges in this district. *Moureau,* 147 B.R. at 442; *In re Rich,* 93 A 976, slip op. at 9–10, 1994 WL 527161 (Bankr.N.D.Ill.1994) (J. Coar); *In re Jackson,* 92 B 1591, slip op. at 8 (Bankr. N.D.Ill.1994) (J. Ginsberg). It is also accepted by this Court. Therefore, this is the "transfer" on which the § 548 analysis must focus.

Section 548(d)(1) provides the basis for determining that expiration of the redemption period is the critical transfer following a real estate tax sale under Illinois law. This provision states:

A transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of filing of the petition.

11 U.S.C. § 548(d)(1). In other words, the "transfer" of interest in Butler's home to Lejcar does not occur until the parties have done everything in the way of recording or giving and taking of possession, *or otherwise fulfilling the requirements of state law for*

---

4. Title 11 U.S.C. § 548(a) provides in relevant part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

    .    .    .    .

(2) (A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B) (i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; ...

5. This section defines the term "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(58)[54].

*the transfer to be good against bona fide purchasers dealing subsequently with the transferor.* 4 King, *Collier on Bankruptcy,* ¶ 548.08 at 548–96 (15th ed. 1993) (emphasis added). Although the formal act of title transfer does not occur until the tax deed is obtained and recorded, the owner's interest in the property dissipates upon expiration of the redemption period.

The annual tax sale therefore represented a conditional disposition of Butler's property. Butler could have sold her home prior to expiration of the statutory right of redemption, and the purchaser from Butler could then have redeemed the tax lien and deprived Lejcar of his interest in the property. *See* 35 ILCS 200/21–345 (defining parties who may redeem). However, after expiration of the redemption period, Butler could not dispose of her property. After that point, neither she nor anyone to whom she might sell the property could prevent issuance of the tax deed to Lejcar. Therefore, Butler's property interest was transferred to Lejcar as a matter of law upon expiration of her redemption period, not at the tax sale itself.

The *McKeever* analysis recognized that a debtor is not physically deprived of property when the redemption period terminates. The tax purchaser must follow procedures under state law for obtaining an actual deed to the property that may be recorded, and then may have to get a court order for possession. The end of the redemption period represents the legal moment following which a debtor is unable under Illinois law to prevent the future loss of property, but is not a physical or documentary transfer at that time.

In his brief, Lejcar argues that some scenarios under Illinois law would allow an owner to retain property after expiration of the redemption right. For example, the property owner may raise an objection at the tax deed hearings, or the tax purchaser may fail to pay the current taxes on the property so that rights of a new tax purchaser could prime the first purchaser. While these are possibilities, they merely describe an owner's residual rights and possible scenarios in the event the tax purchaser fails to complete the sale. The expiration of the redemption period still extinguished all of Butler's equitable interest in the property. Assuming that state law procedures were followed thereafter, her legal title interest in the property was also extinguished when the deed issued. Further, upon perfection by recording, the effective date of the deed related back to the expiration of the redemption period. *McKeever,* 132 B.R. at 1010.

The focus of a § 548 analysis is on the debtor's interest in property. *Id.* at 1011; *In re Jacobson,* 48 B.R. 497, 501 (Bankr. D.Minn.1985). The date that such interest legally terminates is the date which must be analyzed when performing a § 548 analysis.

The expiration of Butler's right of redemption was within one year of the filing of her petition, and thus within the time provided under § 548. Therefore, Butler has alleged a potentially fraudulent transfer.

## II. *What Comes Into the Estate?*

■ We cannot yet conduct a § 548 analysis, as neither side presented materials dealing with requisite elements of reasonably equivalent value [6] and insolvency. However, it is appropriate to consider the consequences of avoiding this transfer if it is

---

**6.** Notwithstanding *BFP v. Resolution Trust Corp. as Receiver for Imperial Fed. Sav.,* —— U.S. ——, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), adherence to state law procedures with respect to a tax sale does not preclude an investigation as to whether the debtor received less than "reasonably equivalent value" for her property.

The Supreme Court's rationale in *BFP* led to the conclusion there that the value obtained at a foreclosure sale held in conformity with state law is the reasonably equivalent value of the property. However, footnote 3 of *BFP* specifically stated that "the considerations bearing upon other

foreclosures (to satisfy tax liens, for example) may be different." *Id.* at ——, 114 S.Ct. at 1761 n. 3.

Bids at a tax sale are based on the taxes owed plus a penalty interest rate. 35 ILCS 200/21–215 (1994). Unlike a foreclosure sale, these bids are in no way based on the value of the subject property. *McKeever,* 132 B.R. at 1006. Therefore, the rationale applied in *BFP* may not be applicable with respect to tax sales in Illinois. However, this question can be revisited at and following trial.

avoided. Lejcar argues that the only interest that debtor could recover is her right of redemption. He contends that the 60–day period provided for cure under § 108(b)(2) has expired and that the debtor is precluded from modifying his claim under § 1322(b)(2). Further, as the state statutory right of redemption under state law has expired, he argues that neither § 1322(b)(3) nor (5) allows the debtor to cure her pre-petition failure to redeem. As a result, Lejcar concludes that any transfer avoided would not bring anything into the estate.

However, Lejcar's analysis ignores the timing provision of § 548(d)(1) discussed above. The transfer of Butler's property took place at the time the right of redemption expired. Therefore, the property, and not merely the right of redemption, comes into the estate if the transfer would be avoided. *McKeever*, 132 B.R. at 1014. Consequently, Lejcar's arguments are misdirected. Since the transfer of the property itself is avoided, whether the debtor could cure its failure to redeem is irrelevant.

■ The next issue following § 548 avoidance would be whether Butler could then recover her property from Lejcar. After a property transfer is avoided under § 548(a), the "trustee" may recover the property or the value of the property. 11 U.S.C. § 550(a). Section 550(a) provides in relevant part that:

> the trustee may recover for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from—
>
> (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

In annual tax sale cases under Illinois law, the tax purchaser is the initial transferee. *McKeever*, 132 B.R. at 1008, 1013; *In re Hernandez*, 150 B.R. 29, 30 (Bankr.S.D.Tex. 1993) (adopting the *McKeever* analysis for tax sales). Nevertheless, Lejcar argues strenuously, relying on *In re Slack–Horner*, 971 F.2d 577 (10th Cir.1990), that the State is the initial transferee for purposes of § 550.

In addition, again relying on *Slack–Horner*, Lejcar asserts that Butler may not recover against him without first seeking to avoid the transfer between herself and the State.

The reasoning in *Slack–Horner* is contrary to the decisions within this district, cited and adopted hereinabove. In *Slack–Horner*, the court's § 548 analysis focused on the tax deed proceeding under Colorado law. The majority opinion (see the dissent, 971 F.2d at 581) viewed the tax deed proceeding as the final step in extinguishment of that state's tax lien. Since the tax purchaser received the lien from the state, the opinion concluded that the state must have been the initial transferee. As the debtor did not attempt to avoid the first transfer between the debtor and the state, he could not recover against the mediate transferee, the tax purchaser, for the second transfer. *Slack–Horner*, 971 F.2d at 580.

With all deference due to an opinion from another circuit, *McKeever* reasoning made it clear that the annual tax sale under Illinois law extinguished this State's tax lien. As a result of that tax sale, the tax purchaser is granted an entirely new lien, evidenced by the certificate of purchase. When debtor failed to redeem her property, the tax purchaser was then entitled to enforce the new lien. Upon enforcement of the tax purchaser's lien, ownership of the property would be transferred from the debtor to the tax purchaser. Therefore, the tax purchaser is the initial transferee under Illinois law for purposes of applying 11 U.S.C. § 550.

■ Lejcar did not obtain his deed from the State of Illinois. In the case of an involuntary transfer of real estate through the tax sale procedure, the State is more like a conduit than a transferee. A party that receives a transfer directly from the debtor will not be considered the initial transferee unless that party gains actual dominion and control over the money or other asset through the transfer. *Matter of Coutee*, 984 F.2d 138, 141 (5th Cir.1993), *citing Bonded Fin. Servs., Inc. v. European Amer. Bank*, 838 F.2d 890, 893 (7th Cir.1988). The test for dominion and control is whether the alleged conduit has the right to use the assets for one's own purposes. *Bonded*, 838 F.2d at 893. In Illi-

nois, the tax sale procedure never gives the State any such right.

At the tax deed hearing, the State of Illinois acts as a facilitator for the tax purchaser. A debtor is usually unwilling to relinquish its property voluntarily. The State therefore issues a deed in the property from the debtor to the certificate holder. At the time of that hearing, the State has no ownership rights in the property nor does it even have a right to enter upon the property. These rights are, however, vested with the certificate holder. Therefore, the State was never a transferee of Butler's property. Thus, the only transfer that may be avoided and reversed under § 550 is the one between Butler and Lejcar.

■ Although Lejcar may lose his property interest in Butler's property, he is entitled to a replacement lien to the extent that he gave value for his interest. 11 U.S.C. § 548(c). This section provides that:

(c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548(c).

The test to determine whether Lejcar is entitled to such a lien is whether he gave value and if he acted in good faith. Value is defined as property or satisfaction or securing of a present or antecedent debt of the debtor. 11 U.S.C. § 548(d)(2)(A). Lejcar's payment at the annual tax sale certainly constituted value. *Matter of Littleton,* 82 B.R. 640, 644 (Bankr.S.D.Ga.1988) (amount paid at foreclosure sale considered "value" for purposes of § 548(c), even if not "reasonably equivalent value" under § 548(a)). If Lejcar chooses to file a counterclaim to enforce that lien, the amount of it will then be determined.

■ Whether Lejcar acted in good faith under § 548(c) is another possible issue. Knowledge of the transferor's insolvency is sometimes said to defeat a transferee's claim that he or she acted in good faith. 4 King, *Collier on Bankruptcy,* ¶ 548.07 at 548–71–77; *Littleton,* 82 B.R. at 844; *In re Anchorage Marina, Inc.,* 93 B.R. 686, 693 (Bankr. D.N.D.1988). However, this approach to "good faith" has generally been applied only to a lender holding a foreclosure sale, not to a tax purchaser.

Unlike foreclosure sales, tax sales are not designed to recover the value of the property.[7] The likelihood that proceeds from an annual tax sale will recover the "reasonably equivalent value" of a property is minimal. Therefore, in bankruptcy, the transfer following tax sale may often be avoided under § 548(a). When the tax purchaser enforces his lien, he will likely have knowledge of the property owner's financial difficulties, but it would make no sense to all to rule that such knowledge imports lack of "good faith" under § 548(c). The tax purchaser is an investor that serves a public purpose in aiding in collection of real estate taxes necessary to fund schools and general services of many governments. Most people who are unable to pay real estate taxes have fallen on hard times. To hold that a tax purchaser who knows this fact thereby lacks good faith would in one blow knock out the viability of the Illinois statutory tax collection system and apply the Bankruptcy Code in a nonsensible way.

■ For purposes of § 548(c), with respect to tax sales conducted in conformity with state law, the purchaser at a tax sale can be presumed to act in good faith when enforcing the certificate of purchase. Of course, to receive this presumption, the tax purchaser must establish compliance with each of the state law procedural and substantive requirements necessary to obtain a tax deed. In the instant case, the uncontested facts demonstrate that Lejcar adhered to the state law requirements in obtaining his tax

---

7. *See supra* note 6 discussing the bidding procedure at the annual tax sale.

deed. Therefore, in the absence of proof establishing some defense by debtor of invidious conduct by Lejcar, the good faith requirement of § 548(c) will likely be satisfied, entitling Lejcar to a lien on Butler's property.

■ The amount of the lien would then be the "value" the transferee gave to the debtor in exchange for the transfer. 11 U.S.C. § 548(c). In this case, Lejcar relieved Butler of her liability to the State for her real estate taxes. The most appropriate measure of relief Lejcar provided Butler is the price that Lejcar paid at the annual tax sale, plus interest thereon at the applicable rate. Failure to include interest as part of the lien would provide a windfall to the debtor by allowing her to circumvent the annual tax sale process and reap the benefit from use of Lejcar's investment without paying for use of his money. Interest for the use of Lejcar's money used to bid at the tax sale is a part of the value that he gave to debtor by his purchase of taxes. In addition, assuming that Lejcar is an oversecured creditor, as is likely the case, he would be entitled to interest under 11 U.S.C. § 506.

### CONCLUSION

For purposes of § 548, the transfer of Butler's property took place when her redemption period expired. Therefore, if the requirements of § 548 are satisfied, the transfer will be avoided and Butler's property will come back to the estate. Lejcar's interest in Butler's property would then be replaced by a § 548(c) lien, which must be paid in full by Butler's Chapter 13 plan. 11 U.S.C. § 1325.[8]

This Court must yet determine whether the transfer between Butler and Lejcar was for reasonably equivalent value and whether the transfer rendered debtor insolvent or if she then was insolvent. The value of the subject property and the question of insolvency are material issues of fact. Neither party has presented materials regarding these issues. Should plaintiff be eventually entitled to judgment on Count I, should that judgment be an absolute avoidance or conditional upon completion of any confirmed Plan (against the possibility that a confirmed Chapter 13 Plan might fail, leaving Lejcar holding a lien instead of a deed)? Moreover, the issues as to Lejcar's possible lien following avoidance must be adjudicated by a counterclaim that has yet to be pleaded. Should he prevail with such a lien claim, an interesting question will then arise as to what Chapter 13 Plan is confirmable to deal with that lien.

Accordingly, the Court denies Lejcar's Motion for Summary Judgment. By separate order, times are fixed for plaintiff to file a counterclaim for lien if he sees fit and for debtor to respond thereto. This proceeding will shortly be set for trial.

---

**8.** Lejcar argues that, in effect, this extends the statutory right of redemption for an additional five years. As discussed above, this is incorrect. The property itself, not the right of redemption, is brought into the debtor's estate if the transfer is avoided. The potential prejudice that may inure to a tax sale purchaser was foreseen by the Illinois legislature. Prior to issuance of a tax deed, a tax purchaser could have a tax sale declared a "sale in error" and have the certificate of purchase canceled if a voluntary or involuntary petition under the provisions of U.S.C.

Chapter 7, 11, 12, or 13 is filed. 35 ILCS 200/21–310(b)(1) (1994).

Lejcar could have applied for such relief upon the filing of Dennis Butler's Chapter 13 petition. Instead, he sought, and received, relief from the § 362 automatic stay and proceeded to obtain a tax deed. In light of the reasoning in *McKeever* and *Moureau*, he acted at his risk when enforcing the lien provided by the certificate of purchase. Therefore, he cannot claim to be unfairly prejudiced by replacement of his certificate of purchase with a § 548 lien.