OPINION OF THE COURT
Thomas A. Stander, J.
The plaintiff, Charles F. Curry Company (Curry), submitted *427 an order to show cause seeking an order vacating and setting aside the foreclosure sale held, pursuant to the judgment of foreclosure, on February 25, 1994, or, in the alternative, an order declaring that no valid foreclosure sale was conducted. After oral argument, additional papers were accepted from the plaintiff, the Referee, and the third-party bidder at the auction.
FACTS
The judgment of foreclosure and sale for 91 Thomas Street, Rochester, New York, was executed by this court on December 28, 1993 and entered on January 1, 1994 in the amount of $34,392.82. Said judgment appointed Douglas S. Gates, Esq. as Referee to sell the premises at the foreclosure sale. The sale of 91 Thomas Street was scheduled for February 25, 1994 at 10:00 a.m.
The Referee appeared at the noticed time and place to conduct the sale as required by the judgment. The Referee opened the bidding, Stephen Teremy bid $100; there were no other bids and the property was struck down for that amount.
The Referee expressed reservations about the absence of the lender and requested that the bidder wait while the Referee contacted the attorney for the lender. The Referee was advised by the lender’s attorney’s office that the loan had been reinstated and that a message was left at the Referee’s office that the foreclosure sale had been canceled.
The Referee then determined that his authority to complete the foreclosure sale was in question. The Referee advised the bidder of the situation, refused to accept the bidder’s offered deposit, and declined to execute a memorandum of sale. The bidder expressed that he regarded the sale as valid and complete.
DISCUSSION
The plaintiff seeks two separate forms of relief in its order to show cause. This court will address each one separately.
1. Validity of Foreclosure Sale
One of the questions posed to this court is whether a valid foreclosure sale was conducted by the Referee on February 25, 1994. RPAPL 1351 (1) requires the judgment of sale to direct the mortgaged premises be sold by or under the direction of *428 the Sheriff of the county or a Referee. The sale in this case was scheduled in accordance with the judgment of foreclosure and sale; with proper publication of the date by the Referee; with the sale to be conducted by the Referee.
When the "sale” of the property actually occurs is in question. RPAPL 1353 (1) states "[a]fter the property has been sold, the officer conducting the sale shall execute a deed to the purchaser.” There was clearly no Referee’s deed executed to any purchaser. In fact, the Referee did not accept the deposit made by the bidder.
The case of Crossland Mtge. Corp. v Frankel (192 AD2d 571 [2d Dept 1993]) involved a foreclosure sale where the representative of the mortgage corporation stopped bidding; a third party was declared the successful bidder; and the Referee granted the successful bidder 20 minutes to obtain the deposit from a bank. While the bidder was gone the representative of plaintiff realized it had authority to bid higher. The Referee rejected the deposit money and reopened the bidding. The Court notes "that the sale was not incomplete while [the successful bidder] was at the bank, since it was within the Referee’s discretion to allow him time to collect the deposit money” (at 572 [citations omitted]).
In Crossland (supra) the Court determined there was no basis to invalidate the sale "since the mistake was unilateral on [the plaintiff’s] part.” (Crossland Mtge. Corp. v Frankel, at 572.) The Court also states that the sale "was 'consummated in complete accord with lawful procedure’.” (Supra.) In the instant case, the sale was noticed, the Referee accepted bids and struck down the property; however, no deposit was accepted and no memorandum of sale provided.
In Glenville & 110 Corp. v Tortora (137 AD2d 654 [2d Dept 1988]) the Court held that "the Referee exercised his discretion to consummate the foreclosure sale so as to best protect the rights of the mortgagees while simultaneously ensuring a successful completion of the sale * * * A Referee must retain limited flexibility, while still acting within the authority of the court as conferred in the judgment of foreclosure, to meet those unforeseen circumstances that might otherwise jeopardize the success of a foreclosure sale” (at 655 [citations omitted]).
As in Crossland (supra), the Referee has discretion as to the deposit money. In this case, the Referee did not accept the deposit, advised that there was a problem with the sale, and *429 determined that he did not have the authority to proceed with the sale. The Referee determined that he did not have the power to execute a deed to the bidder under RPAPL 1353 (1).
Under these circumstances, this court determines that a valid foreclosure sale did not occur on February 25, 1994. The plaintiffs motion for an order declaring that no valid foreclosure sale was conducted is granted.
2. Vacating and Setting Aside the Foreclosure Sale
Despite this court’s ruling above, we also look at whether the foreclosure sale, if it had been determined to be valid, should be vacated and set aside. "[T]he court may exercise its inherent equitable power over a sale made pursuant to its judgment or decree to ensure that it is not made the instrument of injustice * * * Although this power should be exercised sparingly and with great caution, a court of equity may set aside its own judicial sale upon grounds otherwise insufficient to confer an absolute legal right to a resale in order to relieve of oppressive or unfair conduct * * * Where the judgment debtor can show not merely disparity in price, but in addition one of the categories integral to the invocation of equity such as fraud, mistake or exploitive overreaching, a court of equity may grant relief’ (citations omitted). (Guardian Loan Co. v Early, 47 NY2d 515, 520-521 [1979].)
The more recent appellate court decisions state the rule as follows: "[a] court may exercise its equitable powers to set aside a judicial sale only where fraud, collusion, mistake, or exploitive overreaching casts suspicion on the fairness of the sale” (citation omitted). (Crossland Mtge. Corp. v Frankel, 192 AD2d 571, 572 [2d Dept 1993], supra; see, Long Is. Sav. Bank v Valiquette, 183 AD2d 877 [2d Dept 1992].) "[M]ere inadequacy of price * * * does not furnish sufficient grounds for vacating a sale.” (Guardian Loan Co. v Early, supra, at 521.) "[O]nly where the price is so low as to shock the conscience of the court will the sale be vacated.” (Glenville & 110 Corp. v Tortora, 137 AD2d 654, 655 [2d Dept 1988], supra; see also, Crossland Mtge. Corp. v Frankel, at 572; Long Is. Sav. Bank v Valiquette, at 878; Polish Natl. Alliance v White Eagle Hall Co., 98 AD2d 400, 407 [2d Dept 1983].) In New York State "foreclosure sales at prices below 10% of value have consistently been held unconscionably low.” (Polish Natl. Alliance v White Eagle Hall Co., at 408.)
This court must determine whether the foreclosure sale *430 price of $100 is so low as to shock the conscience of the court. The judgment of foreclosure was in the sum of $34,392.82; this was as of December 28, 1993. Stephen Teremy bid $100 at the alleged sale on February 25, 1994. There is evidence submitted on this motion that there was fire damage to the property prior to the scheduled sale. There are affidavits of several individuals as to the value of the property for various times after the alleged sale date, ranging from $500 to $80,000. The general manager of the defendant, Yodah Group, states that in January 1994 the property began being renovated. An agreement with a contractor was signed on January 19, 1994.
There are no affidavits of the precise value of the property on February 25, 1994, the proposed sale date. Therefore, it cannot be conclusively determined that the bid amount of $100 is less than 10% of the value of the property. However, based upon the evidence before this court (including the affidavit of Mr. Teremy who states that on the afternoon of February 25, 1994 there was evidence of a fire-damaged building, a dumpster and work being done on the house and estimates the value as $500 to $5,000; and the affidavit of Ted Holdsworth, general manager of Yodah Group, who advises that renovations took place from January 1994 through May 18, 1994; that defendant had expended $80,000; and that the property had a value as of May 1994 of approximately $60,000 to $80,000), we determine, without the necessity of a hearing, that there is a great disparity between the value bid and the value of the property, which was under renovation.
As to whether the sale, if we had found it valid, should be set aside, we review the cases of Crossland Mtge. and Long Is. (supra) where the Courts denied the parties applications to vacate and set aside a foreclosure sale. In both cases the mistakes were unilaterally made on the part of one of the parties to the action and vacatur was denied.
In the instant case, the plaintiff left a message with the Referee’s office that the sale needed to be adjourned. The Referee never received any message concerning adjournment of the sale. Prior to completing the sale the Referee contacted the plaintiff and was advised of the adjournment. No deposit was accepted by the Referee and no memorandum of sale was provided to the bidder. The mistake involved in this case was that of both the plaintiff’s counsel and the Referee.
"Each case involving a judicial sale should be governed by its own peculiar facts * * * since public policy requires that *431 the power to nullify judicial sales be exercised with caution” (citations omitted). (Polish Natl. Alliance v White Eagle Hall Co., supra, at 408.) "Where the judgment debtor can show not merely disparity in price, but in addition one of the categories integral to the invocation of equity such as fraud, mistake or exploitive overreaching, a court of equity may grant relief.” (Guardian Loan Co. v Early, supra, at 521.) This court understands the necessity to proceed with great caution in using its equitable power to set aside a foreclosure sale.
Based upon the information and evidence submitted on this motion, it is concluded that this property was sold for an inadequate price which shocks the conscience of the court and that there was a mistake by the Referee and the plaintiff as to the adjournment of the sale date, which warrants the invocation of equity in this case. Under the equitable power of this court, the foreclosure sale held on February 25, 1994 is vacated and set aside.
ORDER
Based upon the documents submitted in support of and in opposition to this motion, upon the above-written decision of this court, and after due deliberation, it is hereby
Ordered that plaintiff’s motion is granted in part; and it is further
Ordered that the foreclosure sale of property at 91 Thomas Street, Rochester, New York, commenced on February 25, 1994 was not a valid foreclosure sale.