In re Anthony J. COMIS, Elizabeth C. Comis, Debtors.

Anthony J. COMIS, Elizabeth C. Comis, Plaintiffs,

v.

Brian A. BROMKA, and the County of Oneida, Defendants.

Bankruptcy No. 93–63243.
Adv. No. 93–70198.

United States Bankruptcy Court,
N.D. New York.

Nov. 16, 1994.

Patrick J. Kelly, Syracuse, NY, for defendant Brian A. Bromka.

Evans, Bankert, Cohen, Lutz & Panzone (Edward Earl, of counsel), Utica, NY, for debtors Anthony J. Comis and Elizabeth C. Comis.

G. Lawrence Dillon, Deputy County Atty., Utica, NY, for defendant County of Oneida.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Presently before the Court is a motion filed June 6, 1994, by Brian A. Bromka ("Bromka") to dismiss the complaint filed by Anthony J. Comis and Elizabeth C. Comis ("Debtors") on December 9, 1993, against Bromka and the County of Oneida ("County"). Also before the Court is a second motion filed June 6, 1994, by Bromka seeking to obtain relief from the automatic stay pursuant to § 362(d) of the United States Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code") with respect to real property located at 1628 Seymour Avenue, Utica, New York ("Premises") to permit Bromka to continue an action pending in Utica City Court to obtain possession of the Premises.[1]

Both motions were heard at a regular motion term of the Court on June 28, 1994, at Utica, New York. The parties were to have filed memoranda of law by July 12, 1994. However, on consent of the parties the time was extended and the matter was ultimately submitted for decision on July 27, 1994.

### JURISDICTIONAL STATEMENT

The Court has core jurisdiction over both the contested matter and the adversary proceeding herein pursuant to 28 U.S.C. §§ 1334(b) and 157(a), (b)(1) and (b)(2)(A), (G) and (O).

### FACTS

The parties have stipulated to the following facts:

The Debtors acquired the Premises by deed dated March 16, 1981. See Exhibit "A" of Stipulation Admitting Facts dated May 18, 1994 ("Stipulation"). The Premises were reconveyed by the Debtors to themselves, as husband and wife, by deed dated February 2, 1984. See Exhibit "B" of Stipulation. The County initiated tax sale proceedings against the Premises to collect delinquent sewer taxes on the Premises in the amount of $383.22 in 1988. On December 30, 1989, the premises were sold to the Oneida County Commissioner of Finance ("Commissioner") at a tax sale for the sum of $383.22. On December 30, 1990, the Premises were conveyed by the Commissioner to the County Board of Legislators by tax sale deed, which was recorded in the Oneida County Clerk's Office on May 28, 1993. See Exhibit "C" of Stipulation. On or about February 10, 1993, the Debtors were served with a final notice advising them that they had until March 12, 1993, to exercise their right of redemption ("Redemption Notice"). See Exhibit "D" of Stipulation. The Redemption Notice provided that if the Premises were not redeemed by March 12, 1993 ("Redemption Date"), "then conveyance made shall become absolute and the occupant and all others shall be forever barred from redeeming this property. The next procedure under the Real Property Law of Oneida County will be to sell the acquired property at public auction." The total amount due as of the Redemption Date, was $1,020.03. The Debtors did not exercise their right of redemption. Id. Notice of the public auction scheduled for March 30, 1993, was published in the Utica Observer Dispatch. See Exhibit "E" of Stipulation. The Premises were sold at the auction in open, competitive non-collusive public bidding to Bromka for the sum of $6,250.00. By deed dated April 12, 1993, the Board of County Legislators of the County of Oneida conveyed the Premises to Bromka. The deed was acknowledged on June 11, 1993, and recorded on June 17, 1993, in the Oneida County Clerk's Office. See Exhibit "G" of the Stipulation.

1. The parties agree that a ruling on the motion to dismiss the Debtors' complaint will be dispositive of the motion seeking relief from the automatic stay. Accordingly, the Court considers the 30 day requirement set forth in Code § 362(e) to have been waived by the parties.

On October 28, 1993, the Debtors filed a voluntary petition ("Petition") seeking relief pursuant to Chapter 7 of the Bankruptcy Code. The Debtors, who continue to reside in the Premises, claimed the Premises as exempt property in Schedule C of their Petition. The Premises had a fair market value of $20,000 based on an appraisal dated October 26, 1993. *See* Exhibit "H" of Stipulation.

### ARGUMENTS

Relying on the Supreme Court's holding in *BFP v. Resolution Trust Corp.,* —— U.S. ——, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), it is Bromka's contention that the price received at the tax sale established "reasonably equivalent value" of the Premises. Accordingly, Bromka asserts that the Debtors' complaint should be dismissed for failing to state a cause of action upon which relief can be granted.

In response, the Debtors assert that the purchase price paid by Bromka at the tax sale was not "reasonably equivalent" to the value of the real property conveyed. The Debtors argue that the considerations bearing upon a tax sale are different from those addressed by the Supreme Court in *BFP* with respect to a mortgage foreclosure sale. The Debtors contend that the involuntary transfer of a homestead in which a debtor claims an exemption should be subject to a fair market value standard in determining whether there has been a fraudulent conveyance pursuant to Code § 548(a)(2). Debtors assert that Code §§ 522(h) and (i) give them the authority to set aside the transfer, recover the property and claim their homestead exemption. The Debtors argue that in order to provide a debtor with a fresh start, the Court should consider a policy which would enable debtor to bring exempt property back into the estate if less than fair market value has been paid by the purchaser at the tax sale.

### DISCUSSION

A motion seeking to dismiss a complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), which is incorporated by reference in Rule 7012 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P."), is directed solely at allegations in the complaint. *In re Thomson McKinnon Securities Inc.,* 147 B.R. 330, 333 (Bankr.S.D.N.Y.1992) (citation omitted). "[I]n the interest of prompt disposition of an action, when there has been an introduction of extraneous pleadings which reveal that there is no genuine issue as to any material fact and that on the undisputed facts ... one party is entitled to judgment as a matter of law, it is proper for a court to treat the motion as one for summary judgment and dispose of the motion accordingly." *In re Marceca,* 127 B.R. 328, 330–31 (Bankr. S.D.N.Y.1991) (citing *Samara v. U.S.,* 129 F.2d 594 (2d Cir.1942), *cert. denied,* 317 U.S. 686, 63 S.Ct. 258, 87 L.Ed. 549 (1942); *Boro Hall Corp. v. General Motors Corp.,* 124 F.2d 822 (2d Cir.1942), *cert. denied,* 317 U.S. 695, 63 S.Ct. 436, 87 L.Ed. 556 (1943)). As the parties have stipulated to the facts, the Court will treat the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56, incorporated by reference in Fed.R.Bankr.P. 7056.[2] *See Bogan v. New London Housing Author.,* 366 F.Supp. 861, 864 (D.Conn.1973). In considering a motion for summary judgment, a court's role is to determine whether there is a genuine issue of material fact precluding a movant from obtaining a judgment as a matter of law. *Shabazz v. Keane,* 1994 WL 533299 at 2 (S.D.N.Y. Sept. 30, 1994), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

With respect to an involuntary transfer of a debtor's interest in exempt property, Code § 522(h)(1) allows debtors to exercise the trustee's power pursuant to Code § 548(a)(2) to avoid the transfer and recapture equity in exempt property transferred to a third party prepetition. *See In re Joing,* 61 B.R. 980, 983 (Bankr.D.Minn.1986). This particular section of the Code has been held applicable to tax foreclosures. *See In re Louis L.*

---

**2.** In the Court's view, the parties, by providing the Court with the Stipulation, have waived the notice requirement set forth in Fed.R.Civ.P. 12(b) with respect to treating a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted as one for summary judgment.

*Lasser & Stanley M. Kahn,* 68 B.R. 492, 494 (Bankr.E.D.N.Y.1986), citing to *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 210, 103 S.Ct. 2309, 2316, 76 L.Ed.2d 515 (1983); *see also In re McKeever,* 132 B.R. 996, 1008 (Bankr. N.D.Ill.1991).

To prevail under Code § 548(a)(2), the Debtors must establish (1) a transfer of the Premises, (2) within a year prior to the filing of the Petition, (3) for less than reasonably equivalent value, (4) at a time when they were insolvent. *Id.* at 1010. Code § 101(54) defines "transfer" to include *inter alia* an involuntary parting with property or an interest in property, including the foreclosure of a debtor's equity of redemption. None of the parties appears to dispute that a transfer occurred within the one year period. This Court agrees with the analysis found in *McKeever* which determined that with respect to a tax foreclosure, the transfer occurs at the time the owner's equitable interest in the property is extinguished, namely at the expiration of the right of redemption. *See id.; see also In re Butler,* 171 B.R. 321, 326 (Bankr.N.D.Ill.1994); *In re T.F. Stone Companies, Inc.,* 170 B.R. 884, 889 (Bankr. N.D.Tex.1994); *but see In re Allegheny Intern. Credit Corp.,* 128 B.R. 125 (Bankr. W.D.Pa.1991) (Applying Illinois law, the court held that the date of the transfer occurred not at the expiration of the redemption period, but rather at the tax sale.) In the matter *sub judice,* the Debtors were involuntarily divested of any ownership rights they might have had on March 12, 1993, when their right of redemption expired, which was less than one year prior to the commencement of the Debtors' bankruptcy case. The central issue before the Court is whether, pursuant to Code § 548(a)(2), less than "reasonably equivalent value" was received at the time of the transfer to the County, not to Bromka.

In a decision issued approximately two weeks before the motions herein were filed, the Supreme Court held that "a fair and proper price or a 'reasonably equivalent value' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." *BFP,*

*supra,* —— U.S. at ——, 114 S.Ct. at 1765. Whether the same reasoning applies to a tax foreclosure sale conducted pursuant to state law was not discussed by the Court other than to indicate that "[t]he considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." *Id.* at ——, n. 3, 114 S.Ct. at 1761, n. 3.

Since *BFP* was decided, at least two other courts have had an opportunity to address the issue with respect to tax foreclosures occurring prepetition. *See Butler, supra,* 171 B.R. 321; *In re McGrath,* 170 B.R. 78 (Bankr.D.N.J.1994). Like the Debtors herein, the debtors in *Butler* and *McGrath* had commenced adversary proceedings seeking to avoid tax foreclosure sales of their residences as fraudulent transfers pursuant to Code § 548(a).

The court in *Butler* limited its analysis under Code § 548(a) to addressing the issue of whether a transfer had occurred during the one year period prior to the debtors filing their petition. The court reached no conclusion regarding the question of whether the transfer was for "reasonably equivalent value" in light of the fact that neither party had presented the court with materials dealing with that particular element. The court, however, in *dicta* did indicate that "[t]he likelihood that proceeds from an annual tax sale will recover the 'reasonable equivalent value' of a property is minimal." *Butler, supra,* 171 B.R. at 328. Citing to Footnote 3 of the *BFP* decision, the *Butler* court reasoned that "[b]ids at a tax sale are based on the taxes owed plus a penalty interest rate ... [and] are in no way based on the value of the subject property." *Id.* at 327, n. 6. The court then concluded that the "rationale applied in *BFP may not* be applicable with respect to tax sales in Illinois." *Id.* (emphasis added).

In *McGrath,* the main focus of the court's analysis was on the question of whether the transfer had been for "reasonably equivalent value." The court concluded that "the reasoning of *BFP* applies with as much force to tax foreclosures in New Jersey as it does to mortgage foreclosures." *McGrath, supra,* 170 B.R. at 83. For many of the same policy

reasons discussed in *BFP,* the court in *McGrath* declined to "interpret bankruptcy law as to fraudulent transfers in a manner which differs from state law absent a clear expression of Congressional intent that the federal courts should do so." *Id.,* citing *BFP, supra,* —— U.S. at ——, 114 S.Ct. at 1764. The court in *McGrath* acknowledged that the sale price on a tax foreclosure is likely to be "considerably lower" than on a mortgage foreclosure, resulting in a greater discrepancy between the price paid at a tax foreclosure sale and the fair market value of the property. *Id.* 170 B.R. at 82. However, the court concluded that as long as the transferee was in compliance with state law, the transfer in a tax foreclosure should be deemed to have been for "reasonably equivalent value." *See id.* at 83.

In the matter *sub judice,* the parties have stipulated that the tax sale proceedings were initiated by the County in 1988 and that on December 30, 1989, the Premises were sold to the Oneida County Commissioner of Finance at a tax sale for the sum of $383.22. The purchase by the County was subject to a right of redemption. *See* § 6 of the Oneida County Tax Law (chapter 559, Laws of 1902). The Debtors having failed to redeem the Premises within a year, the Premises were conveyed to the Oneida County Board of Legislators on December 30, 1990, in accordance with § 6 of the Oneida County Tax Law. Pursuant to New York Real Property Tax Law ("NYRPTL") § 1022, the Debtors, as occupants of the Premises, were given two additional years in which to exercise their right of redemption. On or about February 10, 1993, the Debtors were served with the Redemption Notice informing them that they had until March 12, 1993, to redeem the Premises, after which the Premises would be sold at public auction. The Debtors failed to exercise their right of redemption and notice of said auction was published in the *Utica Observer Dispatch.* The Premises were sold to Bromka at an auction held on March 30, 1993, in open, competitive noncollusive public bidding. There have been no allegations that either the transfer to the County or the transfer to Bromka were not conducted in accordance with New York State law. Furthermore, pursuant to § 10 of the Oneida County Tax Law and NYRPTL § 1020(3), the deeds issued first to the County and then to Bromka constituted presumptive evidence that all prior proceedings and required notices were in compliance with state law. *See Rodriguez v. Peterson,* 163 A.D.2d 467, 468, 558 N.Y.S.2d 582 (2d Dep't 1990).

The Debtors were afforded ample opportunity to redeem the Premises. NYRPTL § 1020(3) sets forth the reasons that a conveyance may be canceled including (1) the prior payment of the taxes, the non-payment of which resulted in the sale, (2) the illegal levy thereof by the city or town or (3) any defect in the proceedings affecting jurisdiction upon constitutional grounds. While in the context of mortgage foreclosures, New York State courts have consistently held that inadequacy of price so as to shock the conscience is a sufficient ground for vacating a sale *(see Crossland Mortgage Corp. v. Frankel,* 192 A.D.2d 571, 596 N.Y.S.2d 130 (2d Dep't 1993); *Manufacturers and Traders Trust Co. v. Niagara Square Assoc.,* 199 A.D.2d 975, 608 N.Y.S.2d 22 (4th Dep't 1993)); *see also Charles F. Curry Co. v. Yodah Group, Inc.,* 162 Misc.2d 426, 617 N.Y.S.2d 264, 265 (1994), the Court finds no statutory or case law to support a similar application in the context of a tax foreclosure. The Court acknowledges that the amount paid for real property at a tax sale is unlikely to be based on the value of the subject property. Indeed, in the matter presently before the Court, the County purchased the Premises for $383.22 and on or before March 12, 1993, the Debtors had an opportunity to redeem said Premises by making a payment of $1,020.03. Whether the Court considers the transfer to the County as being for $383.22 (the amount due and owing on the Premises on December 30, 1989) or for $1,020.03 (the amount for which the Debtors could have redeemed the Premises on March 12, 1993), the amount is deemed to be for "reasonably equivalent value."

■ It is the opinion of this Court that Footnote 3 of the *BFP* decision was intended to make clear that the majority of the court chose to narrow its focus to interpreting the law as it applied to the facts before it. The fact that Justice Scalia, writing for the ma-

jority, expressly declined to extend the holding of *BFP* to other forced sales (*see BFP, supra,* —— U.S. at ——, n. 3, 114 S.Ct. at 1761, n. 3), does not prevent this Court from doing so based on the facts presently before it. The Court agrees with the reasoning of the court in *McGrath* that the same "policy considerations favoring deference to mortgage foreclosure sales apply with as much force to tax foreclosure sales." *McGrath, supra,* 170 B.R. at 82. The Bankruptcy Court is without authority to void a tax foreclosure sale conducted in accordance with state law. Furthermore, the Bankruptcy Code should be "construed to adopt, rather than to displace, pre-existing state law" unless a federal statutory purpose to the contrary is clear and manifest. *BFP, supra,* —— U.S. at ——, 114 S.Ct. at 1765 (citations omitted). "[O]ur federal system demands deference to long established traditions of state regulation." *Id.* at —— – ——, 114 S.Ct. at 1765–66.

Debtors argue that such deference should be given to New York law which permits a debtor to claim a homestead exemption. *See* New York Debtor and Creditor Law § 282 and New York Civil Practice Law and Rules § 5206. Admittedly, this was not a consideration facing the Supreme Court in *BFP* as the party seeking to recover the property in that case was a partnership operating as debtor-in-possession that sought to recover the property in that capacity pursuant to Code § 548. However, had Congress intended for a debtor to be able to recover exempt property transferred within a year prior to filing his/her petition in order to provide him/her with a "fresh start", there would have been no need for a debtor to comply with the requirements set forth in Code § 548 as referenced by Code § 522(h), which endows a debtor with no greater avoidance powers than those possessed by a trustee. Section 548(a) of the Code expressly provides that the transfer must have been for less than "reasonably equivalent value" in order for it to be avoided by either a trustee or a debtor. As discussed above, the Debtors have not established this element under the standard set forth by the Supreme Court in *BFP*. Debtors' argument that when the property subject to foreclosure is the debt-

or's residence and equity exists, the sale price should approximate the fair market value of the property or be deemed to be less than "reasonably equivalent value", is unrealistic given the nature of a tax sale. As was noted by the court in *BFP*, " 'fair market value' presumes market conditions that, by definition, simply do not obtain in the context of a forced sale ... Market value cannot be the criterion of equivalence in the foreclosure-sale context." *BFP, supra,* —— U.S. at —— – ——, 114 S.Ct. at 1761–62. It is the view of this Court that the Debtors had three years in which to protect their equity in the Premises. Having failed to exercise their right of redemption over a period of three years, they should not now be allowed to exercise their right to a homestead exemption under the auspices of the Bankruptcy Code.

Accordingly, it is the finding of this Court that based on the Stipulation of the parties, no genuine issues of material fact exist. The Court concludes that as a matter of law the ultimate transfer of both legal and equitable interests in the Premises to the County upon the Debtors' failure to exercise their right of redemption on or before March 12, 1993, was for "reasonably equivalent value" and is not voidable by the Debtors.

■ The Debtors have continued to occupy the Premises despite the fact that Bromka took title on April 12, 1993. As it has been determined that there was no fraudulent conveyance, the Debtors had no interest in the Premises as of the date they filed their petition. Absent such an interest, the Premises cannot be regarded as property of the Debtors' estate within the meaning of Code § 541. *See In re Cretella,* 42 B.R. 526, 530 (Bankr.E.D.N.Y.1984). Accordingly, the automatic stay does not apply to Bromka. As Judge Duberstein noted in *Cretella,* "[t]he Court knows of no authority which would entitle it to interfere with the ownership of property acquired by the purchaser ..." *Id.* at 532. Therefore, it is the conclusion of the Court that Bromka should be permitted to proceed with his eviction proceeding to the extent of obtaining possession of the Premises. However, any actions to be taken against the Debtors personally continue to be

subject to the automatic stay imposed pursuant to Code § 362(a).

For the foregoing reasons, it is

ORDERED that Bromka's motion seeking to dismiss the complaint filed by the Debtors is granted; and it is further

ORDERED that Bromka's motion seeking relief from the automatic stay imposed pursuant to Code § 362(a) is granted only to the extent of permitting Bromka to continue his action pending in Utica City Court to obtain possession of the Premises from the Debtors.