In re John J. and Rita McGRATH, Debtors.

John J. and Rita McGRATH, Plaintiffs,

v.

Betty SIMON, Trustee, Defendant.

Bankruptcy No. 93–33864.
Adv. No. 93–3665.

United States Bankruptcy Court,
D. New Jersey.

July 22, 1994.

Thomas Capron, Avon-by-the-Sea, NJ, for plaintiffs John J. McGrath and Rita McGrath.

Benjamin Slavitt, Slavitt, Fish & Cowen, P.A., Newark, NJ, for defendant Betty Simon, Trustee.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This is the court's decision on a motion by defendant Betty Simon, trustee (hereinafter "Simon")[1] for summary judgment dismissing a complaint by plaintiffs John and Rita McGrath, the debtors, to avoid a tax foreclosure sale of the debtors' residence under section 548(a)(2) of title 11, United States Code (the "Code" or "Bankruptcy Code"). This court has jurisdiction under 28 U.S.C. §§ 1334(b), 157(a) and 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(H). For the following reasons, the defendant's motion is granted.

### FINDINGS OF FACT

The debtors owned a residence at 2404 Emerson Avenue (hereinafter "the property") in Spring Lake Heights (formerly known as the Township of Wall and hereinafter "the Township"). The debtors failed to pay their 1988 real property taxes, and the Township conducted a tax sale. Simon purchased a tax sale certificate (hereinafter the "Certificate") for the property at this sale on November 28, 1989 for the sum of $3,897.42. The Certificate was recorded in the Monmouth County Clerk's Office Book of Mortgages on December 8, 1989.

On November 5, 1991 Simon served written notice on the debtors that proceedings would be instituted to foreclose the Certificate unless it was promptly paid. The debtors failed to pay the amount due on the Certificate, and Simon commenced foreclosure proceedings by filing a complaint on March 4, 1992. The complaint was served upon the debtors on June 8, 1992. The final date for redemption was set by the Superior Court as January 5, 1993 and the amount due to redeem as $24,240.31 plus costs of $1018.58. The debtors failed to redeem the Certificate by this final date. On March 4,

---

1. The defendant is not the bankruptcy case trustee. The record does not reveal the identity of the trust represented by the defendant.

1993 the Superior Court entered a final judgment foreclosing the debtors' equity of redemption and vesting title in Simon.

On June 28, 1993 the debtors filed a petition for relief under chapter 13 of the Bankruptcy Code. The debtors listed Simon as a creditor in their petition and listed the property as an asset of their estate notwithstanding the prior judgment of the Superior Court under which title passed to Simon. On December 21, 1993 the debtors filed the complaint at issue, asserting that Code § 548(a)(2), which allows a trustee or debtor in possession to avoid transfers of the debtor's property occurring within one year of the filing of a petition if the debtor received less than reasonably equivalent value for the transfer, rendered the tax foreclosure sale void.

Simon has alleged that the fair market value of the property on the date of the judgment was approximately $175,000.00. The debtors maintain that the fair market value was $200,000.00 or more. Simon incurred costs totaling $28,295.92 with respect to the purchase and foreclosure of the Certificate.[2]

The issue is whether the $25,258.89 amount due to Simon for the Certificate as set forth in the Superior Court judgment constitutes reasonably equivalent value for the debtors' interest in the property within the meaning of Code § 548(a)(2).

## CONCLUSIONS OF LAW

### I.

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c) (incorporated by reference in FED.R.BANKR.P. 7056). The debtors have argued that there are factual issues in this matter which preclude summary judgment. Specifically, there are disputes as to the fair market value of

the property at the time of the transfer and as to whether the debtor was insolvent or became insolvent as a result of the transfer

■ Bankruptcy Code § 548 states in pertinent part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

\*      \*      \*      \*      \*      \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation....

11 U.S.C. § 548. To avoid a transfer under this section, the trustee or debtor must establish:

(1) that the debtor had an interest in property; (2) that a transfer of that interest occurred within one year of the filing of the bankruptcy petition; (3) that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) that the debtor received "less than a reasonably equivalent value in exchange for such transfer."

BFP v. Resolution Trust Corp., —— U.S. ——, ——, 114 S.Ct. 1757, 1760, 128 L.Ed.2d 556 (1994) (quoting 11 U.S.C. § 548(a)(2)(A)).

The Supreme Court held in BFP that "a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." BFP, —— U.S. at ——, 114 S.Ct. at 1765. The Court, however, expressly limited this

---

2. Simon also paid $25,000.00 to the Howard Savings Bank in satisfaction of a mortgage on the property, which was assigned to Simon. Simon alleges that the debtors have made no payments on this mortgage nor have they paid rent while residing at the premises through April 1994.

Additionally, Simon has expended sums for various items such as taxes and municipal charges as well as theft and liability insurance since acquiring title to the property on March 4, 1993. The total amount of all expenditures including charges for unpaid rent is $81,560.44.

holding to mortgage foreclosures and stated that "[t]he considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." *BFP*, —— U.S. at ——, n. 3, 114 S.Ct. at 1761, n. 3. The resolution of this case therefore turns upon whether the reasoning of *BFP* applies equally to tax foreclosure sales conducted pursuant to state law.

## II.

The New Jersey Tax Sale Law provides a municipality with a lien on land for taxes which are assessed on such land. *N.J.S.A.* § 54:5–6; 34 Michael A. Pane, New Jersey Practice, Local Government Law, § 244 (1993). If taxes are not paid, the municipality is entitled to enforce this lien by selling the property. *N.J.S.A.* § 54:5–19. Notice of the sale must be given by posting in the five most public places in the municipality, and in a newspaper circulating within the municipality. *N.J.S.A.* §§ 54:5–25 to 26. The purchaser at such a sale receives a tax certificate which is a lien that remains subject to the right of redemption. *N.J.S.A.* § 54:5–46. The owner is entitled to redeem its interest in the property within two years from the date of sale if the purchaser is not a municipality. *N.J.S.A.* § 54:5–54. After this two-year period, the purchaser is entitled to proceed to foreclose the right of redemption under *N.J.S.A.* § 54:5–86. When a final judgment is entered, "an absolute and indefeasible estate of inheritance in fee simple" is vested in the purchaser, and any application to reopen the judgment must be heard by the court within three months and then only on the grounds of lack of jurisdiction or fraud. *N.J.S.A.* § 54:5–87. It is undisputed that it was by this statutory method that Simon acquired title to the property in question, and that all requirements of state law were met.

The tax sale process differs from a mortgage foreclosure and sale in several respects. When a default in payment occurs, a mortgagee has the right to institute a civil action to foreclose on the property to recover the mortgage indebtedness, including interest and costs. 30 Roger A. Cunningham and Saul Tischler, New Jersey Practice, Law

of Mortgages, § 202 (1975). Upon conclusion of this action a judgment is entered which adjudicates the amount due on the mortgage with interest, costs and fees. *Id.* § 331. An order is then entered to sell as much of the property as is necessary to satisfy the mortgage as well as subordinate liens. *Id.* The person charged with the duty to sell is usually the sheriff of the county where the property is located, and the means for commencing the sale process is by serving the sheriff with a writ of execution. *Id.* The sale is governed by *N.J.S.A.* §§ 2A:61–1 to 21 which contain certain notice requirements such as public advertisement at least three weeks prior to sale. After the sheriff sells the property, the proceeds are paid to the plaintiff and the other parties as directed by the court. *See Id.* The sale transfers to the purchaser the title and estate acquired by the mortgagee and the estate of the mortgagor at the time the mortgage was created free and clear of all subsequent encumbrances joined in the foreclosure action. *Id.* § 371 (citing *N.J.S.A.* § 2A:50–37).

To summarize, there are significant differences in procedure on mortgage foreclosure and tax sale certificate foreclosure in New Jersey. In a mortgage foreclosure, the judgment directs the property to be sold and the sale occurs after the judgment. In a tax sale certificate foreclosure, the certificate is sold and then after a two-year waiting period, the certificate holder can obtain a foreclosure judgment which vests title directly in the holder without further sale.

There are, however, significant similarities in the procedures as well. With both types of foreclosure, there must be public notice of the sale under the applicable statutes to encourage competitive bidding. And the property owner has ample time to exercise the equity of redemption under both procedures as well. In a mortgage foreclosure, the owner can redeem up to ten days after the sheriff's sale or, if objections to the sale are filed, up to the time an order confirming the sale is entered. *Hardyston Nat'l Bank v. Tartamella*, 56 N.J. 508, 267 A.2d 495 (1970); *see also*, N.J.Ct.R. 4:65–5 to 6. And in a tax foreclosure, the owner can redeem up to the entry of the judgment.

The issue is whether the differences in these types of foreclosure are great enough to put New Jersey tax foreclosures outside the holding of *BFP*.

### III.

One of the cornerstone issues in *BFP* was whether "reasonably equivalent value" under Code § 548(a)(2)(A) means "fair market value." The Court held that it does not:

"The market value of . . . a piece of property is the price which it might be expected to bring if offered for sale in a fair market; not the price which might be obtained on a sale at public auction or a sale forced by the necessities of the owner, but such a price as would be fixed by negotiation and mutual agreement, after ample time to find a purchaser, as between a vendor who is willing (but not compelled) to sell and a purchaser who desires to buy but is not compelled to take the particular . . . piece of property." Black's Law Dictionary 971 (6th ed. 1990). In short, "fair market value" presumes market conditions that, by definition, simply do not obtain in the context of a forced sale.

\*     \*     \*     \*     \*     \*

Market value cannot be the criterion of equivalence in the foreclosure-sale context. *BFP*, —— U.S. at ——, 114 S.Ct. at 1761–1762.

Application of that reasoning to tax foreclosures reveals that it applies with as much force in that context as it does in mortgage foreclosures. A tax foreclosure is as much a forced sale process as a mortgage foreclosure. Moreover, the policy considerations favoring deference to mortgage foreclosure sales apply with as much force to tax foreclosure sales. The holding in *BFP*, that reasonably equivalent value for foreclosed property is the price received at a non-collusive foreclosure sale, is based in large part upon the premise that " 'the general welfare of society is involved in the security of the titles to real estate' and the power to ensure that security 'inheres in the very nature of [state] government.' " *See BFP*, —— U.S. at ———— ——, 114 S.Ct. at 1764–1765 (quoting *American Land Co. v. Zeiss*, 219 U.S. 47, 60,

31 S.Ct. 200, 204, 55 L.Ed. 82 (1911)) (alterations in original). The Court noted that foreclosure laws vary from state to state based upon how each state values the interests of creditors and debtors, and setting a federal "reasonable" foreclosure price would place "federal bankruptcy law well beyond the traditional field of fraudulent transfers." *BFP*, —— U.S. at ——, 114 S.Ct. at 1763. Rather than place the title of property purchased at foreclosure under a "federally created cloud", the Court held that reasonably equivalent value was the price paid at a foreclosure sale provided that all of the requirements of the state's foreclosure law have been complied with. *BFP*, —— U.S. at ——, 114 S.Ct. at 1765.

### IV.

It is troublesome that the sale price will often, if not always, be considerably lower on a tax foreclosure than on a mortgage foreclosure, because the amount of taxes due is usually much less than the amount due on a mortgage. This will mean that difference between the fair market value and the forced sale price is going to be greater with a tax foreclosure than with a mortgage foreclosure. *BFP* makes clear, however, that fair market value is simply not the value in a forced sale context, and this court sees no reason why that is any less true if the forced sale happens to be in a tax foreclosure. Moreover, the State of New Jersey amended N.J.S.A. § 54:5–87 effective May 12, 1994 to clarify that a tax sale foreclosure is not a fraudulent transfer under the Uniform Fraudulent Transfer Act, N.J.S.A. §§ 25:2–20 to 34. N.J.S.A. § 54:5–87, which deals with foreclosure of tax sale certificates, now states in pertinent part:

The Superior Court, in an action to foreclose the right of redemption, may give full and complete relief under this chapter, in accordance with other statutory authority of the court, to bar the right of redemption and to foreclose all prior or subsequent alienation and descents of the lands and encumbrances thereon, except subsequent municipal liens, and to adjudge an absolute and indefeasible estate of inheritance in fee simple, to be vested in the purchaser. The judgment shall be final upon the defen-

dants, their heirs, devisees and personal representatives, and their or any of their heirs, devisees, executors, administrators, grantees, assigns or successors in right, title or interest and no application shall be entertained to reopen the judgment after 3 months from the date thereof, and then only upon the grounds of lack of jurisdiction or fraud in the conduct of the suit. *Such judgment and recording thereof shall not be deemed a sale, transfer, or conveyance of title or interest to the subject property under the provisions of the "Uniform Fraudulent Transfer Act," R.S. 25:2–20 et seq.*

*N.J.S.A.* § 54:5–87 (emphasis added to 1994 additions).

While the state statutes do not determine whether a transfer is avoidable under Bankruptcy Code § 548(a)(2), this amendment to N.J.S.A. § 54:5–87 confirms the concern expressed in *BFP* that the federal courts should not interpret bankruptcy law as to fraudulent transfers in a manner which differs from state law absent a clear expression of Congressional intention that the federal courts should do so. *BFP,* —— U.S. at ——, 114 S.Ct. at 1764.

### V.

For all of these reasons, the Court concludes that the reasoning of *BFP* applies with as much force to tax foreclosures in New Jersey as it does to mortgage foreclosures. The price paid by Simon for the tax sale certificate was "reasonably equivalent value" for the debtors' interest in the property under Code § 548(a)(2)(A). Since the elements of Code § 548(a)(2) are in the conjunctive, the debtors cannot meet their burden of proof and the court need not address the other elements of a cause of action under that section. Simon's motion for summary judgment is therefore granted.

Simon is to submit an order within ten days under D.N.J.Bankr.Ct.R. 4(c).