**In re Estelle LORD, Debtor.**

**Estelle LORD**

**v.**

**Herman NEUMANN, Arthur Lerner, et al.**

**Bankruptcy No. 94–16098 DWS.**
**Adv. No. 94–0688.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 23, 1995.

**430**

Stuart Donegan, Cherry Hill, NJ, for Estelle Lord.

Richard H. Anderson, Media, PA, for Herman Neumann and Arthur Lerner.

## OPINION

DIANE WEISS SIGMUND, Bankruptcy Judge.

Before the Court is the Motion for Summary Judgment (the "Motion") filed by Defendants Herman Neumann and Arthur Lerner ("Movants") in response to the Complaint filed by the Debtor seeking to avoid a tax sale of her property to the Movants under 11 U.S.C. § 548(a)(2)[1] and 522(h) (the "Complaint") 2.[2]

In the Complaint, the Debtor avers that the consideration paid by the Movants at the tax sale was not the "reasonably equivalent value" in exchange for the Property and, therefore, the sale should be avoided under Bankruptcy Code §§ 548(a)(2) and 522(h) as a fraudulent transfer. The Movants argue that the decision of the United States Supreme Court in *BFP v. Resolution Trust Corp.*, —— U.S. ——, 114 S.Ct. 1757, 128 L.Ed.2d 556, *reh'g denied*, —— U.S. ——, 114 S.Ct. 2771, 129 L.Ed.2d 884 (1994) ("*BFP*") that the reasonably equivalent value for fore-

closed real property is the price received at a foreclosure sale conducted in accordance with state law requirements should be extended to real property sold at a tax sale conducted in accordance with state law requirements. The parties agree that if this Court concludes that the amount paid at tax sale conducted in accordance with state law requirements is the "reasonably equivalent value", within the meaning of 11 U.S.C. § 548(a)(2)(A), then this sale should not be avoided and a deed to the Property should be executed and delivered to the Movants.[3] If the Court concludes to the contrary, the parties agree that the Tax Claim Bureau should return Defendants' payment plus interest. For the reasons stated below, we find reasonably equivalent value has been paid and grant the Motion.

## BACKGROUND

In a Joint Pretrial Report filed on December 7, 1994, the parties agreed to all relevant facts which we summarize herein. Real estate located at 20 Gilmore Road, Delaware County, Pennsylvania, consisting of a house and a separate adjacent vacant lot, is owned by the Debtor and Joseph T. Lord, her husband, as tenants by the entireties (the "Property"). A tax sale of the Property was held on September 12, 1994. The Debtor filed her Chapter 13 bankruptcy petition on September 15, 1994. At the tax sale, the Movants purchased the Property for $13,469.33, which price represented unpaid real estate taxes for Delaware County, Haverford School District and Haverford Township for the

---

1. 11 U.S.C. § 548(a)(2) provides:

   (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

   (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

   (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

   (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

   (iii) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

2. Since the Debtor's right to avoid a transfer of the property under § 522(h) is dependent on the avoidability of that transfer under § 548, the parties logically agree that summary judgment in favor of Movants with respect to § 548(a)(2)(A) will resolve as a matter of law the claim under § 522(h) as well.

3. The Complaint also joined the Delaware County Tax Claim Bureau and Pat Panko, its Tax Collector, neither of whom have filed an answer and presumably await this Court's decision to determine their course of action, i.e. return of amounts paid plus interest or delivery of the deed to the Property to Defendants.

years 1992, 1993 and 1994, municipal sewer and rubbish fees for the same time period, and all fees required to be paid by purchasers at a tax sale. The parties agree that the fair market value of the Property is $160,000. The parties also agree that the tax sale was conducted in accordance with the statutory requirements of Pennsylvania's Real Estate Tax Sale Law, 72 P.S. §§ 5860.101 *et seq.* (the "PA Tax Law").[4]

### DISCUSSION

A motion for summary judgment is governed by Fed.R.Civ.P. 56 applicable in this proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. Fed.R.Civ.P. 56(c) states that summary judgment, "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

The party moving for summary judgment must overcome the initial burden of demonstrating the absence of a material question of fact. *Celotex v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). A court must find that the motion alleges facts which, if proven at trial, would require a directed verdict. 6 J. Moore, *Moore's Federal Practice,* ¶ 56.26 (2d ed. 1988). If so, the respondent "must set forth specific facts showing there is a genuine issue for trial", and may not "rest on the mere allegations of the pleading". Fed.R.Civ.P. 56(e). The absence of a genuine issue for trial is evident where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Mashusita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Here, the parties agree there is no issue of genuine fact and that the only issue before this Court is the legal issue stated above.

### A.

The resolution of the issue before the Court revolves around the interpretation and application of the Supreme Court's decision in *BFP.* In *BFP,* the purchaser took possession of a residence at a prepetition foreclosure on a deed of trust in accordance with California law. The property was sold for $433,000, but had a fair market value of $725,000. The debtor argued that the price received at the foreclosure was not the "reasonably equivalent value" as that term is defined in § 548(a)(2)(A). The Supreme Court held that the "reasonably equivalent value" for foreclosed real property is the price received at the foreclosure sale, so long as there has been compliance with all of the requirements of the state's foreclosure law. —— U.S. at ——, 114 S.Ct. at 1765. The Supreme Court rejected the position that "reasonably equivalent value" meant "fair market value" or some percentage of fair market value stating as follows:

> "The market value of ... a piece of property is the price which it might be expected to bring if offered for sale in a fair market; not the price which might be obtained on a sale at public auction or a sale forced by the necessities of the owner, but such a price as would be fixed by negotiation and mutual agreement, after ample time to find a purchaser, as between a vendor who is willing (but not compelled) to sell and a purchaser who desires to buy but is not compelled to take the particular ... piece of property." Black's Law Dictionary 971 (6th ed. 1990). In short, "fair market value" presumes market conditions that, by definition, simply do not obtain in the context of a forced sale....

> Market value cannot be the criterion of equivalence in the foreclosure-sale context.

—— U.S. at ——, 114 S.Ct. at 1761–62.

The Supreme Court stated that "foreclosure has the effect of completely redefining the market in which the property is offered for sale...." —— U.S. at ——, 114 S.Ct. at 1767. The Supreme Court concluded that:

> We deem, as the law has always deemed, that a fair and proper price, or a "reason-

4. The Debtor admits that she received notice of the public sale of the Property by certified mail on July 26, 1994, and that notice of the sale was posted on the Property on August 9, 1994 and published in the *Delaware County Legal Journal,* the *News of Delaware County* and the *Delaware County Daily Times.*

ably equivalent value", for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with.

—— U.S. at ——, 114 S.Ct. at 1765. Further, the Supreme Court, recognizing the states' "essential sovereign interest in the security and stability of title to land" within their boundaries, —— U.S. at —— n. 8, 114 S.Ct. at 1764 n. 8, required clear Congressional intent from the language of the Code, which it did not find, to displace pre-existing state law.

The Supreme Court, however, expressly limited its holding to mortgage foreclosures of real estate stating that "[t]he considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different." —— U.S. at —— n. 3, 114 S.Ct. at 1761 n. 3. The Debtor argues that this footnote shows that the Supreme Court did not intend that its decision apply to tax sales.

### B.

Two courts since *BFP* have held that the *BFP* reasoning applies to regularly conducted tax sales and granted summary judgment based thereon: *McGrath v. Simon (In re McGrath),* 170 B.R. 78 (Bankr.D.N.J.1994) and *T.F. Stone Companies, Inc. v. Harper (In re T.F. Stone Companies, Inc.),* 170 B.R. 884 (Bankr.N.D.Tex.1994). A third case, *Butler v. Lejcar (In re Butler),* 171 B.R. 321, 326 n. 4 (Bankr.N.D.Ill.1994) considered in footnote the applicability of *BFP* but, as discussed below, deferred the issue for trial.

The courts in *McGrath* and *T.F. Stone* considered the applicability of *BFP* to the state tax sale laws applicable therein, New Jersey law and Oklahoma law, respectively, which, in both cases, involved the sale of tax certificates. Because the state laws in both cases are very similar, we will discuss only the New Jersey law, as considered by the court in *McGrath,* in detail. Under the New Jersey Tax Sale Law, N.J.S.A. § 54:5–1 *et*

*seq.,* the municipality obtains a lien on property for taxes assessed against the property. If the taxes are unpaid, the municipality can enforce its lien by selling the property. N.J.S.A. § 54:5–19. Notice of the sale must be given by posting in the five most public places in the municipality, and in a newspaper of general circulation. N.J.S.A. § 54:5–25 to 26. The purchaser at the sale receives a tax certificate which is a lien on the property subject to the taxpayer's right of redemption. N.J.S.A. § 54:5–46. The owner may redeem its interest in the property by paying the taxes within two years from the date of the sale, if the purchaser is not a municipality. N.J.S.A. § 54:5–54. If the taxes are not paid within this two year period, the certificate holder may foreclose the right of redemption under N.J.S.A. § 54:5–86. When a final judgment is entered, "an absolute and independent estate of inheritance in fee simple" is vested in the purchaser, and any application to reopen the judgment must be heard by the court within three months and then only on the grounds of lack of jurisdiction or fraud. N.J.S.A. § 54:5–87.

The court in *McGrath* compared the New Jersey Tax Sale Law to the state's mortgage foreclosure laws noting that the tax sale process differed in several respects.[5] In particular, the court noted that in a mortgage foreclosure in New Jersey, the judgment obtained by the mortgagee after institution of a civil action directs the property to be sold and the sale occurs after the judgment. In a tax sale certificate foreclosure, the certificate is sold and then after a two year waiting period, the certificate holder can obtain a foreclosure judgment which vests title directly in the holder without further sale. *McGrath,* 170 B.R. at 81. The court also noted significant similarities between the two procedures. Both procedures require public notice of the sale to encourage competitive bidding and provide the property owner with ample time to redeem the property.[6]

---

**5.** Presumably, if a state's tax sale laws provide the taxpayer with similar protections, rights and remedies as the foreclosure laws provide the property owner, then the extension of the *BFP* holding to such tax sales is appropriate.

**6.** In a New Jersey foreclosure sale, the owner can redeem up to ten days after the sheriff's sale or, if objections to the sale are filed, up to the time an order confirming the sale is entered. N.J.Ct.R. 4:65–5 to 6. In a New Jersey tax sale, the owner can redeem up to the entry of the judgment.

The court concluded that the differences in these types of foreclosures were not so great as to place New Jersey tax foreclosures outside the holding of *BFP*. In reaching this conclusion, the court was troubled by the fact that the sale price "will often, if not always, be considerably lower on a tax foreclosure than on a mortgage foreclosure, because the amount of taxes due is usually less than the amount due on a mortgage." *McGrath*, 170 B.R. at 82. Consequently, the difference between the fair market value and the forced sale price often will be greater with a tax sale than a mortgage foreclosure sale. The court overcame this concern by noting that

> *BFP* makes clear, ..., that fair market value is simply not the value in a forced sale context, and this court sees no reason why that is any less true if the forced sale happens to be in a tax foreclosure.

*Id.*

The court in *T.F. Stone*, considering a similar tax sale statute and the applicability of *BFP* to § 549(c) of the Code, likewise concluded that the price obtained at a "non-collusive tax foreclosure sale, conducted in accordance with all state laws, presumptively meets the 'present fair equivalent value' standard in § 549(c)." *T.F. Stone*, 170 B.R. at 892. The court stated as follows:

> The general policies set forth in the *BFP*, *supra*, opinion appear to apply in this case as well. The Supreme Court required clear congressional intent from the language of the Code to overturn prior foreclosure law. The Supreme Court's rationale to protect *bona fide* purchasers appears to be no less applicable to a § 549 transfer in a non-collusive tax sale as it is in a § 548 transfer by way of mortgage foreclosure sale.[7]

*Id.* The court went on to note the Supreme Court's reservation of ruling as to tax sales in footnote 3 of *BFP* and specifically found that the "rationale behind the *BFP* decision appears to be likewise compelling in a tax sale foreclosure under § 549(c)." *Id.*

The Debtor argues that the holdings in *McGrath* and *T.F. Stone* are not dispositive of the instant issue because the state tax sale laws in those cases require a different tax sale procedure, i.e., the sale of tax certificates followed by a two year redemption period, than Pennsylvania law, which does not provide for a post-sale redemption period. While we do not reach the same conclusion as the Debtor, we agree with the Debtor that it is necessary to examine the PA Tax Law in detail to determine whether it affords the taxpayer the same type of protections foreclosure laws afford property owners.

It was perhaps the court's inability to undertake that analysis in *Butler* that prompted its refusal to rule on the issue of "reasonably equivalent value" on a motion for summary judgment. Concluding that it could not "yet conduct a § 548 analysis as neither side presented materials dealing with requisite elements of reasonably equivalent value ...", 171 B.R. at 326, the court left for trial the question whether the rationale applied in *BFP* may not be applicable with respect to tax sales in Illinois. This interpretation of *Butler* is consistent with the court's statement in footnote that "notwithstanding *BFP*, adherence to state law procedures with respect to a tax sale does not preclude an investigation as to whether the debtor received less than 'reasonably equivalent value' for her property," *id.* n. 6[8] and the *BFP* footnote that "considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be differ-

---

7. The court followed *In re Bago*, 149 B.R. 610 (Bankr.C.D.Cal.1993) which found that the reasoning of BFP extended to § 549(c) notwithstanding the different language in that section (i.e. "fair equivalent value" versus "reasonably equivalent value" in § 548) which had caused two other courts to construe § 549 more stringently than § 548. *Compare In re Shaw*, 157 B.R. 151 (9th Cir. BAP 1993); *In re Powers*, 88 B.R. 294 (Bankr.D.Nev.1988). We express no opinion on the applicability of *BFP* to a § 549 avoidance action but rather look favorably on the

*Stone* decision as it relates to the extension of the *BFP* reasoning to a tax foreclosure sale.

8. An examination of those considerations as presented in the Illinois tax sale statute was touched upon by the court but then left to be dealt with at trial. The court noted that bids at a tax sale are based on the taxes owed plus penalty interest. In its view, these bids, unlike bids at a foreclosure sale, are in no way based on the value of the subject property. *Id.*

ent." —— U.S. at —— n. 3, 114 S.Ct. at 1761 n. 3. Thus, we agree with Debtor that we must examine the foreclosure procedure employed in a Pennsylvania tax sale to determine if there exist protections equivalent to those present in *BFP* and may not conclude that reasonably equivalent value has been provided simply because the applicable state statutory requirements have been met.

Although not considering *BFP* in the context of a regularly conducted tax sale, we find the decision in *Vermillion v. Scarbrough (In re Vermillion)*, 176 B.R. 563 (Bankr. D.Or.1994) helpful in developing a construct for determining whether the reasoning of *BFP* is applicable to a regularly conducted Pennsylvania tax sale. In that case, the defendants asked the court to utilize *BFP* to determine as a matter of law that a land sale contract forfeiture conducted in accordance with Oregon law cannot be avoided as a fraudulent transfer under § 548(a)(2). *Id.* at 566. The court determined that mortgage foreclosure proceedings provide defaulting parties with three basic procedural protections: notice, reasonable opportunity to cure, and strict adherence to statutory requirements. *Id.* at 569. After a careful review of the Oregon land sale contract foreclosure statute,[9] the court found that it also provided the same three procedural protections. *Id.*

Our conclusion that the sufficiency of the protections built into the tax sale foreclosure law is determinative of whether the price paid at that sale will be deemed conclusive evidence of equivalent value is reinforced by the analysis of the Supreme Court in *BFP*.

Foreclosure laws typically require notice to the defaulting borrower, a substantial lead time before the commencement of foreclosure proceedings, publication of a notice of sale, and strict adherence to prescribed bidding rules and auction procedures. Many States require that the auction be conducted by a government official, and some forbid the property to be sold for less than a specified fraction of a mandatory pre-sale fair-market appraisal. [citation omitted] When these procedures have been followed, however, it is "black letter" law that mere inadequacy of the foreclosure sale price is no basis for setting the sale aside, although it may be set aside (*under state foreclosure law,* rather than fraudulent transfer law) if the price is so low as to "shock the conscience or raise a presumption of fraud or unfairness." (emphasis in original) [citations omitted.][10]

—— U.S. ——, 114 S.Ct. at 1757. These are therefore the benchmarks by which we will measure the PA Tax Law to which we now turn.

### C.

The PA Tax Law sets forth specific and detailed procedures for sale of real property on account of delinquent taxes. Under the PA Tax Law, 72 P.S. §§ 5860.101 *et seq.*, the taxing authority must provide notice to the taxpayer of delinquent taxes by July 31 of the same year the taxes are due, advising that the taxpayer has until July 1 of the following year to pay the taxes and that if such payment is not made, the taxpayer's property can be advertised for sale.[11] 72 P.S. § 5860.308(a). In the notice, the taxing authority must also inform the taxpayer that there can be no redemption after the actual sale. *Id.;* 72 P.S. § 5860.501(c). If the taxpayer does not pay the taxes prior to July 1 of the following year, the property will be scheduled for sale which can be originally scheduled no earlier that the second Monday

---

9. Under the Oregon land sale forfeiture statute, upon a default, the vendor declares the land sale contract terminated and retains the vendee's prior payments as liquidated damages. The vendor must comply with strict default notice provisions. The vendee has between 60 and 120 days to cure the default depending upon the amount of equity the vendee has in the contract. After expiration of the cure period without cure, the vendor records a declaration of forfeiture in the county where the property is located, after which the vendee has no further rights in the property. The vendor may not obtain a deficiency judg- ment. The statute does not require the sale of the property, so competitive bidding does not take place. ORS §§ 93.915, 93.930, 93.935, 93.940.

10. The parties' stipulation precludes any consideration of unconscionability, fraud or unfairness.

11. The PA Tax Law also provides a procedure by which the taxpayer can apply for an extension of up to 12 additional months to pay the taxes. 72 P.S. § 5860.502, § 5860.503.

of September and no later than October 1. 72 P.S. § 5860.601(a).

As the sale approaches, the taxpayer must be given additional notice. At least 30 days prior to the sale, the taxing authority must give notice of the sale not less than once in two newspapers of general circulation in the county and once in the legal journal, if any, designated by the court for publication of legal notices, 72 P.S. § 5860.602(a), and provide similar notice to the owner, by certified mail, return receipt requested, 72 P.S. § 5860.602(e)(1). Each property scheduled for sale must be posted at least ten days prior to the sale. 72 P.S. § 5860.602(e)(3). If the property is owner-occupied, the taxing authority must also give the owner-occupant written notice of the sale at least ten days prior to the date of the actual sale by personal service by the sheriff. 72 P.S. § 5860.601(a)(3).

At any time before the actual sale, any owner or lien creditor of the owner, may (1) cause the sale be canceled by paying all taxes that have become absolute, and interest and other charges thereon then due, or (2) cause the sale to be stayed by entering into an agreement to pay 25% of all taxes due and the balance in three installments within one year. 72 P.S. § 5860.603. The sale is conducted by a tax claim bureau created under Pennsylvania law. 72 P.S. §§ 5860.601(a), 5860.102, 5860.201. No sale of property shall be made by the Bureau unless a bid equal to the upset price is made. 72 P.S. § 5860.605.[12]

A comparison of the sales conducted under Pennsylvania's mortgage foreclosure law, the prices received under which are conclusively deemed to be for "reasonably equivalent value" under *BFP*, with those conducted under the PA Tax Law does not reveal any greater protection afforded the property owner. In Pennsylvania, before a residential mortgage lender may accelerate indebtedness or commence a foreclosure action, the lender must give the mortgagor 30 days notice. 41 P.S.

§§ 403(a) and (b). Thereafter, the lender may file a mortgage foreclosure action which the mortgagor has 20 days to answer. Pa. R.Civ.P. 1141, 1018.1(b). If there is no response, the lender obtains a judgment which it can enforce by a writ of execution which the lender can obtain from the prothonotary after filing a praecipe. Pa.R.Civ.P. 3250, 3103. Handbills must be posted on the property and in the sheriff's office at least 30 days prior to the sale. Pa.R.Civ.P. 3129.2(b). Written notice must be served upon the owner(s), judgment creditors, and other parties with an interest in the property, at least 30 days prior to the sale. Pa.R.Civ.P. 3129.2(c). Notice of the sale must also be published once a week for three successive weeks in a newspaper of general circulation in the county and in a legal publication, if any, designated by the court for publication of notices, the first publication being not less than 21 days before the sale. Pa.R.Civ.P. 3129.2(d). The mortgagor may cure at any time up to one hour before the sale to prevent the sale. 41 P.S. § 404. No sale of the property may be made unless the upset price is bid. 72 P.S. § 5860.605. Unlike the laws of many other states, there is no right of redemption in Pennsylvania.

This Court finds that the protections, rights and remedies afforded a delinquent taxpayer under the PA Tax Law are no less than those afforded a mortgagor under Pennsylvania's mortgage foreclosure law. Indeed taxpayers receive more and earlier notices prior to the tax sale than mortgagors, and a longer guaranteed period of time within which to cure the default.[13] Each statutory scheme contemplates competitive bidding pursuant to prescribed bidding procedures which are conducted by a government official and neither provides for a period of redemption once the sale is held. The PA Tax Law affords the taxpayer the three key protections offered by foreclosure laws: notice, am-

---

12. The upset price equals the sum of tax claims (liened and accrued) of any taxing entity plus interest thereon, municipal claims, record costs and costs of sale. 72 P.S. § 5860.605.

13. Under the PA Tax Law, the taxpayer has at least one year within which to pay the taxes and save the property from sale. Under Pennsylvania's mortgage foreclosure law, the foreclosure procedure can be completed within less than one year absent litigation.

ple opportunity to cure, and strict adherence to statutory requirements.

A comparison of the sale procedures under the PA Tax Law and the New Jersey and Oklahoma tax laws, the latter of which have been found to set reasonably equivalent value under the *BFP* reasoning, supports our conclusion. Like the New Jersey and Oklahoma statutes, the PA Tax Law provides ample notice to the taxpayer, a substantial opportunity to cure, and requires strict adherence to statutory requirements. Debtor would have this Court conclude otherwise based on the absence of a redemption period such as exists in tax certificate sale states such as New Jersey and Oklahoma. We decline to do so for several reasons. First, the PA Tax Law provides a period of over one year from the initial notice of intended sale on account of tax liens until the tax foreclosure sale is held and the taxpayer's equity of redemption is foreclosed. According to the Supreme Court in *BFP*, there must be "a substantial lead time before the commencement of foreclosure proceedings." —— U.S. at ——, 114 S.Ct. at 1763. So long as the taxpayer has that lead time, it seems irrelevant whether it occurs after the sale of a tax certificate as in New Jersey and Oklahoma or after the first notice of intention to sell the property if taxes are not paid as in Pennsylvania. The important consideration is that the taxpayer has sufficient opportunity to arrange payment of the taxes and knows with certainty when that right will be lost. While we acknowledge that the period in New Jersey is two years and the period in Pennsylvania is but one, that difference is not dispositive here. Indeed these provisions represent each state's policy judgment after balancing the "divergent interests of debtor and creditor," judgments which the Bankruptcy Code gives us no authority to question. *Id.,* —— U.S. at ——, 114 S.Ct. at 1763. Second, it seems to follow that if Pennsylvania mortgage procedure (which provides no redemption period) conclusively establishes reasonably equivalent value than the absence of a post-sale redemption feature under the PA Tax Law would not compel a different result.

Finally, in both procedures there is provision for competitive bidding conducted by a government official, albeit in New Jersey and Oklahoma occurring at the sale of the tax certificate and in Pennsylvania at the sale of the property.[14]

For all of these reasons, we conclude that the reasoning of *BFP* applies to tax sales conducted in accordance with the PA Tax Law. The price paid by Movants for the Property at the tax sale was the "reasonably equivalent value" under § 548(a)(2)(A). Finding that the Movants are entitled to judgment as a matter of law, the Movant's Motion for Summary Judgment will be granted and, in accordance with the parties' agreement, a deed to the Property shall be executed and delivered to the Movants forthwith.

An Order consistent with the foregoing Opinion will be entered.

### *ORDER*

AND NOW, this 23rd day of February, 1995, upon consideration of the Defendants Herman Neumann and Arthur Lerner ("Movants") Motion for Summary Judgment (the "Motion") filed by in response to the Complaint filed by the Debtor seeking to avoid a tax sale of her property to the Movants under 11 U.S.C. § 548(a)(2) and 522(h), and the parties' briefs relating thereto, it is hereby **ORDERED** that

1. The Motion is GRANTED and judgment is entered in favor of the Movants and against the Debtor; and

2. A deed to the Property shall be executed and delivered to the Movants forthwith.

---

**14.** In New Jersey bidding starts at the amount of the liens plus interest at 18% and costs. The bidder who bids the lowest rate of interest prevails. N.J.S.A. § 54:5–32. The Pennsylvania bidding procedure starts at the upset price and continues as in a mortgage foreclosure sale.