In re Jennifer GOLDEN, Debtor.

Jennifer GOLDEN, Plaintiff,

v.

MERCER COUNTY TAX CLAIM BUREAU and Eastlake Development Corporation, Defendants.

EASTLAKE DEVELOPMENT CORPORATION, Movant,

v.

Jennifer GOLDEN and Gary J. Gaertner, Trustee, Respondents.

In re Joseph RODRIGUES d/b/a Rodrigues Auto Repair, Debtor.

Joseph RODRIGUES d/b/a Rodrigues Auto Repair, Plaintiff,

v.

MERCER COUNTY TAX CLAIM BUREAU and Eastlake Development Corporation, Defendants.

EASTLAKE DEVELOPMENT CORPORATION, Movant,

v.

Joseph RODRIGUES and Gary J. Gaertner, Trustee, Respondents.

Bankruptcy Nos. 94–10815, 94–10765. Adv. Nos. 95–1044, 95–1048. Motion No. MIJB–1.

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 20, 1995.

---

Thomas A. Dill, Sharon, PA, for Joseph Rodrigues.

Robert L. Damewood, Farrell, PA, for Jennifer Golden.

Richard J. Parks, Erie, PA, for Eastlake Development Corporation.

## OPINION

WARREN W. BENTZ, Chief Judge.

### Introduction

On September 28, 1994, the Mercer County Tax Claim Bureau ("Tax Claim Bureau") conducted a tax sale (the "Tax Sale") of various properties on which delinquent taxes were owed. Among the properties sold were the residence of Joseph Rodrigues ("Rodrigues") located at 188 Elm Avenue, Sharon, Pennsylvania, and the residence of Jennifer Golden ("Golden") located at 1084 Stambaugh Avenue, Sharon, Pennsylvania (together with 188 Elm Avenue, the "Properties"). Eastlake Development Corporation ("Eastlake") was the high bidder on both the Rodrigues and Golden properties. Following the Tax Sale, both Rodrigues and Golden (collectively, "Debtors") filed voluntary Petitions under Chapter 13 of the Bankruptcy Code; Rodrigues on November 4, 1994 and Golden on November 25, 1994. Eastlake filed its motions for relief from the automatic stay in both cases to accept the tax sale deeds to the Properties. An evidentiary hearing was conducted on the motions for relief from the automatic stay. The Debtors subsequently filed Complaints in which they demand that

the sales be set aside as fraudulent transfers under 11 U.S.C. § 548 and for the reason that the Tax Sale was conducted pursuant to a state law which violates the Fifth and Fourteenth Amendments to the U.S. Constitution.

Before the Court are cross-motions for summary judgment on the Adversary Complaints. Eastlake has also filed a Motion to Strike and/or Grant Protective Order ("Motion to Strike") wherein it requests that the Debtors' First Request for Admissions to Mercer County Tax Claim Bureau, which Debtors have attached to their brief in support of their Motion for Summary Judgment, be stricken from the record. Based on the record of the evidentiary hearing on Eastlake's Motions for relief from stay and based on the record of the non-evidentiary hearing on Eastlake's Motion to Strike, and having received briefs on the Cross–Motions for Summary Judgment, we find that all of the pending matters are ripe for resolution.

*Facts*

*A. Notice*

*1. Rodrigues*

The Tax Claim Bureau mailed notice to Mr. and Mrs. Rodrigues by certified mail, restricted delivery, advising them that their property was to be sold at the Tax Sale. The certified mail was returned unclaimed. Notice was re-mailed by first class mail on September 9, 1994.

Notice was also personally served on Mrs. Rodrigues and notice was posted on the Rodrigues property on August 9. Following the sale on September 28, notice was mailed on October 4 by certified mail which was signed for by Mrs. Rodrigues.

*2. Golden*

The Tax Claim Bureau mailed notice to Golden by certified mail, restricted delivery, advising her that her property was to be sold at the Tax Sale. The certified mail was returned unclaimed. Golden testified that she didn't know why she didn't pick up the certified mail. Notice was re-mailed by first class mail on September 9, 1994. She admit- ted she received notice of the tax sale and thereafter contacted the Tax Claim Bureau in an unsuccessful attempt to work out payments.

The Sheriff was unsuccessful in three attempts to serve Golden personally. The Tax Claim Bureau petitioned the Court to waive personal service which the Court granted on an ex parte basis.

Notice was also posted on the Golden property. Golden received an additional notice following the sale on September 28.

*B. The Sale*

The sale occurred on September 28, 1994. Over 100 properties were up for sale. The sale of the Properties to Eastlake was conducted on that date. With oral notice at the sale, the sale was continued to October 26, 1994. The original advertising stated that the sale may be continued. A consolidated report of sale was filed with the Court on December 9, 1994. The sale was confirmed Nisi by the Court on December 12, 1994. The Court absolutely confirmed the sale on January 12, 1995. The Debtors' Properties were covered in the decree Nisi; however, they were not included in the absolute confirmation because of the bankruptcy filings.

*C. Sale Price*

The minimum bid acceptable for a property at a tax sale is the "upset price." The upset price is fixed as the amount of the delinquent taxes on the property plus the costs of sale. By the time a property is sold at tax sale, there are typically two years and nine months' taxes due. The upset price often reflects only a small percentage of the value of the property being sold. Rodrigues purchased his property in January, 1992 for $28,000 and thereafter, made improvements to the property. The upset price on the Rodrigues property was $3,179.96 (consisting of 1992 taxes, penalty and interest— $1,159.54; 1993 taxes, penalty and interest— $1,058.04; 1994 taxes—$907.38, and costs $55.00). Golden offered an appraisal of her property showing a value of $8,000. The upset price on the Golden property was $2,203.94. Every notice and advertisement of the tax sale gives the approximate upset

price. The notice and advertisement provide no photographs, no property description and no statement of the value of the property. At the auction, open bidding is conducted. The Tax Claim Bureau can take no less than the upset price. If a price above the upset price is offered, the property is sold to the highest bidder.

The sale took place as scheduled on September.28, 28, 1994. Eastlake was the sole bidder on the Golden property for the upset price of $2,203.94. The initial bid on the Rodrigues property was the upset price of $3,179.96. On that property, there were a series of competitive bids with the final high bid of $7,900 being made by Eastlake.

### D. Court Approval

The Tax Claim Bureau filed its consolidated report of sale with the Court on December 9, 1994. The Properties were listed on the report along with the fact that the Debtors had filed their bankruptcy Petitions. On December 12, 1994, the sale was confirmed Nisi by the Court.

The Decree Nisi starts a 30 day period in which objections to the sale can be filed. If no objections are filed, the Court enters absolute confirmation. No objections were filed and absolute confirmation was entered on January 12, 1995.

The consolidated report showed the sale price of the Rodrigues property as $8,519.90. The price bid was actually $7,900. The higher amount includes recording and transfer fees. Similarly, the Golden property was shown on the consolidated report as being sold for $2,500 when the actual bid was $2,203.94.

Both Debtors received notice both before and after the sale. No objections to the sale were filed. Mrs. Rodrigues' testimony that she went to the Tax Claim Bureau before the September 28 sale and was told that the property had already been sold is not credible. Rodrigues ignored all of the notices until after the sale had taken place.

Golden was aware that absent payment of the tax liability, her property would be sold. Golden contacted the Tax Claim Bureau and requested a $100 per month payment plan. She was advised that she had defaulted on the prior arrangement. No agreement was made. Golden made no payment and never made any further contact with the Tax Claim Bureau nor did she file any objection to the sale.

### Issues

1. Whether the Tax Claim Bureau complied with the procedures set forth in the Real Estate Tax Sale Law, 72 P.S. § 5860.101 et seq. on the sale of real property for taxes?

2. Whether the Real Estate Tax Sale Law violates the Fifth and Fourteenth Amendments to the Constitution?

3. Whether a sale has occurred where the state court has not approved the sale as of the property owners' bankruptcy filing dates.

4. Whether the sale of the Debtors' properties can be set aside as a fraudulent conveyance on account of a sale at a bargain price.

5. Whether the admissions of the Tax Claim Bureau attached to the Debtors' brief in support of summary judgment should be stricken from the record.

### Discussion

### 1. Sale Procedure

The Pennsylvania Real Estate Tax Sale Law, 72 P.S. § 5860.101 et seq. (the "Tax Sale Law") provides detailed notice requirements and procedures for the protection of owners of real property which is to be the subject of a tax sale. The Debtors assert that the sale was defective because the Tax Claim Bureau failed to file its consolidated return to the Court within 60 days after the sale was held.

The sale was held on September 28, 1994 and continued by oral notice to October 26, 1994. The Tax Claim Bureau filed its consolidated return to the Court on December 9, 1994. 72 P.S. § 5860.607 provides that "[i]t shall be the duty of the bureau, not later than sixty (60) days after a sale was held, to make a consolidated return to the court of common pleas of the county. . . ."

It is the Debtors' position that since the Properties were sold on September 28, the December 9 report was delinquent and thus, the sale is invalid.

72 P.S. § 5860.601 provides that a sale may be adjourned, readjourned, or continued without additional notice if the sale is held by the end of the calendar year. 72 P.S. § 5860.601(a) (Purdon's C.S.A.1990). Accordingly, we find that the sale was properly adjourned to October 26 and that the 60 days for the Tax Claim Bureau to file its consolidated report commenced on that date. Therefore, the December 9 filing of the consolidated report was timely.

■ If there had been a delay in the filing of the consolidated return, it would only have given the property owners additional time to file objections or exceptions to the sale. Tax sales are not invalid "for mere technical omissions, irregularities or errors." *See Hess v. Westerwick*, 366 Pa. 90, 76 A.2d 745 (1950). To the extent that there had been any minor deviation from the technical sale procedures, such as a delay in the filing of the consolidated report of sale, the Debtors would not have been prejudiced in any way.

Debtors also assert that the amounts reported to the Court on the consolidated report were incorrect because the amounts listed included not only the bid amount, but also included the recording and transfer fees. We find that this insignificant deviation caused no harm.

The essential acts concerning the tax sale procedure were properly performed by the Tax Claim Bureau and the significant rights of the Debtors in their properties were appropriately protected. Accordingly, we find that the sale was property conducted.

### 2. Constitutionality

■ The Debtors assert that the Tax Sale Law violates the "takings clause of the Fifth Amendment to the U.S. Constitution made applicable to the states by the Fourteenth Amendment to the U.S. Constitution, in that it authorizes a public taking of private property for public use, without just compensation." The Debtors posit that the Tax Sale was a "taking" and that the Real Estate Tax Law is designed to sell the Properties for a fraction of their value so that the Debtors are not provided with "just compensation." The Debtors further assert that when the properties are lost at the Tax Sale, the result is that the Debtors are forced to pay greater than their fair share of the burden of local taxation.

■ The Debtors direct our attention to numerous cases which involve eminent domain proceedings where the government is taking property for a public purpose. A sale of land for delinquent taxes is not a taking for a public purpose. *Richardson v. Brunner*, 356 S.W.2d 252, 254 (Ky., 1962) *cert. den.*, 371 U.S. 815, 83 S.Ct. 27, 9 L.Ed.2d 56 (1962). The sale of the Properties for delinquent taxes involves the taxing power, not the eminent domain power of the government. *Id.; Pendell v. Dept. of Revenue*, 315 Or. 608, 847 P.2d 846, 849–50 (1993). In a tax sale context, the takings clause is not dispositive nor the appropriate basis for starting an inquiry. *Id.; Hughes v. State*, 314 Or. 1, 838 P.2d 1018 (1992). The purpose of tax sales is not to strip the taxpayer of his property, but to insure the collection of taxes. *Hess v. Westerwick*, 366 Pa. 90, 98, 76 A.2d 745, 748 (1950).

■ We note that the Fifth Amendment "was designed to bar government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960). The Tax Sale is nothing more than a step in the foreclosure of a lien imposed under the taxing power to collect the fair share from those who have failed to meet their burden. Debtors assert that the Tax Claim Bureau makes no effort to ascertain the actual value of the properties being sold nor any effort to disseminate the actual value to potential buyers and makes no effort to secure a purchase price in excess of the taxes owed. The Tax Sale Law requires adequate notice, advertising, a public sale, and a period for objection after the sale has taken place. The advertising attracts bidders to a public sale at which the highest bid is accepted. Such a procedure provides reasonable assurance of the

properties bringing a fair price. The Tax Sale Law only seeks to collect from the Debtors their fair share of the tax burden.

We find that the provisions of the Tax Sale Law do not violate the U.S. Constitution and the Amendments thereto.

### 3. Court Approval of Sale

■ Under Pennsylvania law, there is no redemption period for any property after the actual sale thereof. 72 P.S. § 5860.501(c). The term "sale" is defined as "the actual auction of the properties, at which bidding occurs, and at which the properties are struck down to. the highest bidder." *In re Upset Sale of September 8, 1980 of the Montgomery County Tax Claim Bureau*, 90 Pa.Commonwealth 384, 386, 495 A.2d 221, 222 (1985) *quoting In re: Lawrence County Tax Claim Bureau for Sale of Properties Held in Year 1977 for Delinquent Taxes*, 60 Pa.Commonwealth 333, 335, 431 A.2d 1116, 1117 (1981). The purchaser at a tax sale obtains vested equitable ownership at the fall of the auctioneer's hammer. *See Butler v. Lomas and Nettleton Co.*, 862 F.2d 1015 (3d Cir.1988) (In mortgage foreclosure proceeding, the time of transfer is the date of the sale rather than the date of recordation of deed); *See also Pennsylvania Co. for Insurances on Lives v. Broad St. Hospital*, 354 Pa. 123, 47 A.2d 281, 283 (1946).

■ Property in which the debtor holds only legal title and not an equitable interest as of the commencement of the case becomes property of the estate only to the extent of the debtor's legal title, but not to the extent of any equitable interest in such property that the debtor does not hold. 11 U.S.C. § 541(d).

■ When a purchaser receives equitable title at a tax sale, but legal title remains in a debtor, and the debtor thereafter files for bankruptcy, cause exists to lift the stay to allow the equitable owner to gain legal title. *See In re Spencer*, 115 B.R. 471, 485 (D.Del. 1990); *In re Donovan*, 183 B.R. 700 (Bankr. W.D.Pa.1995). The ministerial acts of reporting the sale to the court, court confirmation, and delivery of the deed are irrelevant. The focal point is not court confirmation and

delivery of the deed. The "sale" was the auction where the Debtors lost the right to redemption.

■ The Debtors assert that the tax sales are avoidable pursuant to 11 U.S.C. § 549. § 549 addresses transfers which occur postpetition. Under Pennsylvania law, transfer of the Debtors' properties occurred on the sale date which was prior to the bankruptcy filings. Accordingly, there was no postpetition transfer and § 549 is inapplicable.

### 4. Fraudulent Conveyance

■ The Debtors assert that the price paid by Eastlake for the Properties at the Tax Sale was not the "reasonably equivalent value" and, therefore, the sales should be avoided as fraudulent transfers under § 548 of the Bankruptcy Code. The Debtors assert that the decision of the United States Supreme Court in *BFP v. Resolution Trust Corp.*, —— U.S. ——, 114 S.Ct. 1757, 128 L.Ed.2d 556 *reh'g. denied*, —— U.S. ——, 114 S.Ct. 2771, 129 L.Ed.2d 884 (1994) ("BFP") that the reasonably equivalent value for foreclosed real property is the price received at a foreclosure sale conducted in accordance with state law requirements should not be extended to tax sales.

We find ourselves in agreement with those courts which have followed BFP, and held that the reasoning of BFP applies as well to regularly conducted tax sales. *In re Hollar*, 184 B.R. 243 (Bankr.M.D.N.C.1995); *In re Comis*, 181 B.R. 145 (Bankr.N.D.N.Y.1994); *In re Lord*, 179 B.R. 429 (Bankr.E.D.Pa. 1995); *In re McGrath*, 170 B.R. 78 (Bankr. D.N.J.1994).

■ "[T]he protections, rights and remedies afforded a delinquent taxpayer under the PA Tax Law are no less than those afforded a mortgagor under Pennsylvania's mortgage foreclosure law." *In re Lord*, 179 B.R. at 435.

Accordingly, the price paid by Eastlake for the Properties at Tax Sale was the "reasonably equivalent value" under § 548.

### 5. Tax Claim Bureau Admissions

Since we have determined that there is no basis to overturn the Tax Sale, we see no harm in leaving the admissions of the Tax Claim Bureau in the record. The admissions are an attempt by the Debtors to show that many of the properties sold at a tax sale in Pennsylvania are sold for the upset price and that the upset price is substantially less than the value of the properties. We think that the *BFP* case and those subsequent cases which have followed it, foreclose the Debtors' argument that a tax sale brings less than reasonably equivalent value for the property being sold. Accordingly, we will refuse Eastlake's Motion to Strike the admissions from the record.

### *Conclusion*

We find that the tax sale procedure employed by the Mercer County Tax Claim Bureau is constitutional, and that there is no basis to overturn the sale on the basis of improper sale procedure or as a fraudulent conveyance. The Debtors' Complaints will be dismissed and Eastlake's Motion for Relief from Stay will be granted. An appropriate Order will be entered.